[No. 246. Decided December 18, 1891.]

## LUCY A. RYAN, *Respondent*, v. DAVID FERGUSSON, *Appellant*.

HUSBAND AND WIFE—COMMUNITY PROPERTY—LIABILITY FOR DEBTS— MORTGAGES—EXECUTORS AND ADMINISTRATOR'S SALE UNDER ORDER OF COURT.

Under §§ 2411, 2412, Code 1881, upon the death of either the husband or wife, the whole community estate, and not merely the decedent's interest therein, is subject to administration proceedings for the payment of community debts.

Under §§ 1523, 1524, Code 1881, authorizing the probate court to order a sale of the mortgaged property of a decedent, if the redemption thereof is not deemed expedient, community property mortgaged by a decedent and his wife may be ordered sold for the purpose of paying the mortgage thereon.

Such sale, under administration proceedings, being a proceeding *in rem*, personal notice thereof to the widow of decedent is unnecessary, unless required by statute.

Where, in the administration of a decedent's estate, certain community real estate, mortgaged by him and his wife, is sold under the provisions of §§ 1523, 1524, Code 1881, the sale being duly confirmed by the probate court, but the deed executed thereunder purporting merely to convey "all the right, title, interest and estate of the estate of deceased at the time of his death," an equitable title to the entire tract is conferred upon the purchaser, sufficient to constitute a defense to an action for ejectment.

(DUNBAR, J. dissents.)

*Appeal from Superior Court, King County.*

The facts are fully stated in the opinion.

*J. C. Haines*, *I. M. Hall* and *Smith & Littell* (*L. B. Stedman*, of counsel), for appellant.

*W. Lair Hill* and *G. A. Hill*, for respondent.

The opinion of the court was delivered by

Scott, J.—This is an action in the nature of ejectment, brought by respondent to recover four city lots, situate in the city of Seattle, King county. The judgment of the court below was in the plaintiff's favor for an undivided one-half of the property, and for the defendant for the other half. The defendant appeals. The complaint is in the ordinary form of complaints in actions of this nature, setting up ownership and the right of possession of the demanded premises. The answer denies all of the allegations of the complaint, and alleges that the defendant was the sole owner in fee of said premises, and rightfully in possession. The reply denies the ownership and right of possession of the defendant. The case was tried by the court without a jury, and the appellant bases his contention for a reversal of the judgment upon the findings of fact.

It appears by said findings that the respondent is the widow of one John H. Ryan, who died in this state on the 28th day of February, 1880, intestate, leaving no lineal descendants. That in June, 1877, Wm. N. Bell and Lucy G. Bell, who were the owners in fee simple of the real estate in controversy in this action, duly executed and delivered a deed thereof to said John H. Ryan. That the respondent and said John H. Ryan were married previous to this time, and were then living together as husband and wife; and that he paid the purchase price of said real estate out of money acquired during the said marriage by their joint labors. That in April, 1878, said John H. Ryan and said plaintiff duly mortgaged said premises to one Jeremiah S. Driggs, to secure the payment of a certain prom-

issory note of said John H. Ryan to said Driggs, bearing
date of said day, for the sum of $250, and interest at the
rate of one and one-half per cent per month from date
until paid, which said mortgage and note were subse-
quently assigned to one John Kennedy. That on the 7th
day of May, 1880, Eben S. Osborne was, by the probate
court of King county, Washington Territory, duly ap-
pointed administrator of the estate of said John H. Ryan,
deceased, and duly qualified and entered upon the duties
of such administrator. That on the 26th of July, 1880,
said Osborne, as such administrator, presented to said pro-
bate court his verified petition, reciting the existence of
said mortgage and note; the non-payment thereof, except
interest to the amount of $45; the assignment thereof to
the said Kennedy; the presentation by said Kennedy of
his claim on said note and mortgage, and allowance thereof
by said petitioner and said probate court; that there were
not sufficient personal assets to pay the funeral expenses of
said deceased, expenses of his last sickness, and other
claims against his estate, and that there were no personal
assets whatsoever that could be applied toward the re-
demption of said real property; that such redemption
would not be beneficial to the estate, and would be very
injurious to the other creditors, and that such redemption
was wholly inexpedient; that it was necessary to sell the
whole of said real estate to pay the said demand and the
cost and expenses of sale, and the other liens, and that it
was not likely there would be much (if any) surplus, and
that such surplus (if any) would be required to pay the
claims of the other creditors which had been allowed, and
praying an order directing the sale and conveyance of said
real property, according to the practice of said court, and
the application of the proceeds to the payment and dis-
charge of said mortgage debt, after paying expenses of
such sale, and that the residue (if any) be disposed of in

due course of administration. That thereafter, and on said 26th day of July, 1880, said court, upon said petition, made an order directing the said administrator, Eben S. Osborne, to sell the real estate hereinbefore described, either in one parcel or in subdivisions, as the said administrator might judge most beneficial to said estate, at public auction to the highest bidder for cash, gold coin of the United States, in the manner prescribed by law; that upon such sale and payment of the purchase price, said administrator execute a conveyance to the purchaser, which should convey to such purchaser all the right, title and interest which the deceased would have had in such property, had not the same been mortgaged by him; that the proceeds of such sale be applied to the payment and discharge of such mortgage, and that the residue be disposed of in due course of administration; that the said administrator make due return of his proceedings to said court. That thereafter, to wit, on September 11, 1880, said administrator sold said real estate at public venue to said John Kennedy, in the manner prescribed in said order of sale, made due report of said sale, and the same was by said court duly approved and confirmed on the 22d day of November, 1880. That on the 18th day of September, 1880, said Eben S. Osborne, as administrator as aforesaid, executed, acknowledged and delivered to said purchaser, John Kennedy, a deed of "*all the right, title, interest and estate of the estate of the said John H. Ryan, deceased,*" at the time of his death, and also all the right, title and interest which the said deceased would have had in said property had not the same been mortgaged by said deceased, which deed was approved by the judge of said probate court on the 27th day of September, 1880. That thereafter, by sundry mesne conveyances, the defendant herein became, and was at the time of the commencement of this action, the owner of whatever interest vested in said Kennedy by virtue of

the sale last aforesaid. That at the time of the commencement of this action said defendant, by his tenant, was in exclusive possession of said real estate, claiming to be the owner of the whole thereof in fee.

And as conclusions of law the court found—

"That, at the time of the death of said John H. Ryan, the real estate described in the complaint was community property of said John H. Ryan and this plaintiff; that upon the death of said John H. Ryan, the title to the undivided one-half of said real estate was in the plaintiff, and that said interest was unaffected by the proceedings of the probate court and administrator aforesaid; that by said proceedings and sale said John Kennedy became the owner in fee of the undivided one-half of said real property, which said estate is now vested in the defendant herein; that plaintiff Lucy A. Ryan was, at the commencement of this transaction, and now is, the owner in fee of the undivided one-half of all the lots and parcels of land hereinabove described, and entitled to the immediate possession of the same; that the defendant unlawfully withholds from the plaintiff the possession of said half of said property."

It is not questioned upon the facts found but that the land aforesaid was community property. The controversy is as to what the estate was which the probate court acted upon. The position taken by respondent as to the community property, which was sustained by the lower court, is that upon the decease of the husband only his interest therein could be administered upon, which was one-half, and that the other half belonged to the wife and was in no wise affected by the proceedings in the probate court, and there is much to be said in support of this contention. But after a careful consideration of the question, and from the interminable confusion that would otherwise result, we are forced to the conclusion that upon the death of one member of the community it is the community estate which is to be administered upon for the purpose of settling the claims against the community, and that in this case the probate

court not only acted upon the separate property of John H. Ryan, if he had any, but also upon the community property of the deceased and of Lucy A. Ryan.   In *Holyoke v. Jackson*, 3 Wash. 239, GREENE, C. J., in speaking of this relation, said:

"In it, the proprietary interests of husband and wife are equal, and those interests do not seem to be united merely, but unified; not mixed or blent, but identified. It is, *sui generis*, a creature of the statute.  By virtue of the statute this husband-and-wife creature acquires property."

This property is liable for the debts of the community. Sections 2411 and 2412 of the Code of 1881 upon this subject, are as follows:

"SEC. 2411.   Upon the death of either husband or wife, one-half of the community property shall go to the survivor, subject to the community debts, and the other half shall be subject to the testamentary disposition of the deceased husband or wife, subject also to the community debts.

"SEC. 2412.   In case no testamentary disposition shall have been made by the deceased husband or wife of his or her half of the community property, it shall descend equally to the legitimate issue of his, her or their bodies.   If there be no issue of said deceased living or none of their representatives living, then the said community property shall all pass to the survivor, to the exclusion of collateral heirs, subject to the community debts, the family allowance and the charges and expenses of administration."

Neither one owns any specific part of this property before the dissolution of the community, and upon its dissolution by the death of one member no part of it can vest in the survivor except subject to the community debts. In administering upon the estate of the deceased member, community debts are proper charges against the same. The interest of the surviving member in the community property must be subjected to its just share of this indebtednesss in some manner.   If this whole property was

not under the jurisdiction of the probate court, under the
circumstances of this case, the interest of the survivor could
not be made to respond to any part of these claims in the
administration proceedings. Can it be said that it is the
intent or policy of the law that creditors must prove their
claims against the community in the probate court in the
first instance, in order to reach the interest of the deceased
member in the community property, and in case of a
deficiency be driven to another forum to reach the half
interest of the surviving member in that same property,
equally liable for that same debt? Or that, where the in-
terest of the deceased in such property has borne an undue
share of these debts, the heirs of such member should be
compelled to bring an action against the survivor for a con-
tribution? The law abhors a multiplicity of suits. During
the lifetime of the community, its property can be reached
for the payment of a community debt in one proceeding.
Upon the death of either party the community ends upon
the instant, but the relationship of the parties in the prop-
erty as to its liability for the community debts is not altered.
These debts are not postponed until the death of the other
member, and there was no way of reaching the interest of
the deceased member in such property for the payment of
these debts where the same were not secured by mort-
gage, except by applying to the probate court in the first
instance and then bringing an action in case of a dis-
allowance. Otherwise such claims would be barred after
the lapse of time specified by law within which to pre-
sent the same—at least to the extent of ever afterwards
proceeding against the estate of the deceased. The in-
terest of the surviving member in the community prop-
erty may be likened to that of a lineal heir of the
deceased. It is true the deceased could have devised
the one-half thereof to any one, and thus have excluded
the heir, and that he could not have affected the right of

the survivor to the other half. The statute expressly provides for this. But at no time during his lifetime could he have alienated his interest in the community real estate, or any part of it, by his sole act. The property was treated as an entirety in this respect, and it required the act of both parties to alienate any part of it. It stands upon a different footing than that of any other property. And the interest of the surviving member therein, so far as the payment of the debts of the community is concerned, should not be allowed to vest to deprive the court of jurisdiction over the whole property for this purpose. Such interest should be treated the same as that of the heir or devisee. The statute says one-half shall go to the survivor subject to the community debts, and from the very nature of the case it is held in abeyance or suspended to that extent, and cannot go until these matters are determined and disposed of, and that which is to go is thus ascertained. Otherwise it would relegate the simple, straightforward proceeding of administering upon the whole property to the awkward and involved one, to say the least, even if there was any authority for it, of administering upon the interest of the deceased in such property. No way is pointed out in which to obtain a partition or division of it as a preliminary step, or for obtaining possession thereof, as in the case of a partnership. It seems to us it is the intention of the law that upon the death of either spouse the whole community estate is subject to administration proceedings for the payment of community debts, and for distribution. As to what authority an executor would have over it we do not decide, but the whole community property would necessarily be brought under the jurisdiction of the court, and disposed of in some manner.

The probate court of King county, by reason of the location of the property, the dissolution of the community by the death of one of its members, and the due appoint-

ment of the administrator, obtained jurisdiction over the lands here in controversy. No question is raised over the regularity of the initiatory proceedings. But it is claimed that Lucy A. Ryan had no notice of the sale of these lands, or of the pendency of the special proceeding under which the same was ordered. The administration of an estate is a proceeding *in rem*, and notice was not necessary except as required by statute. In *Grignon's Lessee v. Astor*, 2 How. 319, BALDWIN, J., says:

" In cases *in personam*, where there are adverse parties, the court must have power over the subject-matter and the parties; but on a proceeding to sell the real estate of an indebted intestate, there are no adversary parties, the proceeding is *in rem*, the administrator represents the land (11 S. and R. 432); they are analogous to proceedings in the admiralty, where the only question of jurisdiction is the power of the court over the thing, the subject-matter before them, without regard to the persons who may have an interest in it; all the world are parties. In the orphans' court, and all courts who have power to sell the estates of intestates, their action operates on the estate, not on the heirs of the intestate; a purchaser claims, not their title, but one paramount. 11 S. and R. 426. The estate passes to him by operation of law. 11 S. and R. 428. The sale is a proceeding *in rem*, to which all claiming under the intestate are parties (11 S. and R. 429), which directs the title of the deceased. 11 S. and R. 430."

And see *Wyman v. Campbell*, 6 Porter 219; 31 Am. Dec. 677; Freeman on Judgments (3d ed.), §§ 606, 609.

The lands in question were sold under §§ 1523 and 1524 of the 1881 Code, which are as follows:

" SEC. 1523. If any person die, having mortgaged any real or personal estate, and shall not have devised the same or provided for the redemption thereof by will, the probate court, upon the application of any person interested, may order the executor or administrator to redeem the estate out of the personal assets, if it should appear to the satisfaction of the court that such redemption would be beneficial to the estate and not injurious to creditors.

"Sec. 1524. If such redemption be not deemed expedient, the court shall order such property to be sold at public sale, which sale shall be with the same notice and conducted in the same manner as required in other cases of real estate provided for in this act, and the executor or administrator shall thereupon execute a conveyance thereof to the purchaser, which conveyance shall be effectual to convey to the purchaser all the right, title and interest which the deceased would have had in the property had not the same been mortgaged by him, and the purchase money, after paying the expenses of the sale, shall first be applied to the payment and discharge of such mortgage, and the residue in due course of administration. If said sale of the mortgaged premises shall be insufficient to secure the mortgaged debt, the mortgagee shall file a claim for balance, authenticated as other claims, and payable in due course of administration."

Notice of the sale was given, as provided by § 1504, providing for a notice of sale of real estate in probate proceedings, and this was the only notice required. The proceedings are admitted to have been regular under these sections. Now, then, what did the probate court sell? The claim was a charge upon the whole of said real estate. The petition recites "that it was necessary to sell the whole of said real estate." The order of the court directed it all to be sold. The order, following the statute, in speaking of the conveyance, uses the word "deceased" instead of "mortgagor," which was evidently meant. Where the husband and wife were mortgagors, it should have been interpreted to mean both of them, even before the community system was established, where the legal title to the land was in the deceased, these statutes being then in force. Such a proceeding would have carried something more than the bare interest of the deceased; it would have cut off the dower right of the wife, and have passed the whole title, which was then unquestionably to be administered upon. *St. Clair v. Morris,* 9 Ohio, 16, 34 Am. Dec. 415. As no new provisions were made

therefor in this respect when the community system was
adopted, it was adopted with reference to the probate law as
it then stood, which must be construed as embracing the
new system without any unnecessary radical changes which
were clearly not intended to be effected. But that the effect
now given to the law in question, under the present sys-
tem, is right, is rendered if anything more certain by the
new system itself. Here there was in effect but one mort-
gagor, and that was the community, although it did take
the joint act of both parties to create the lien. It may be
said that the community was deceased also—it ended with
the death of the husband. For the sake of economy and
the convenience of all parties, its entire business relations
should be settled, and its disposition effected at one time
and in the same proceedings. Such is the purpose of the
law. This particular step under §§ 1523 and 1524 in the
administration proceedings was evidently intended as a
sort of foreclosure of the mortgage where a sale of the land
was ordered, in lieu of the ordinary foreclosure, although
any interested party could have instituted it by petition-
ing for a redemption. The fact that the mortgagee could
be coerced into that proceeding is a very strong reason for
holding that it was intended to afford him a complete
remedy therein. Otherwise, in case of inadequate security,
if only the interest of one member of the community could
be sold, and there were no other assets, the mortgagee
would be subjected to the cost of two proceedings, the
special one in the probate court to reach the one interest
and then an action to foreclose as against the other half,
thereby occasioning delay and additional expense, which
could benefit none of the parties, and to the manifest
injury of a part or all.

The deed which was executed purported to convey "all
the right, title, interest and estate of the estate of John H.
Ryan, deceased, at the time of his death, and also all the

right, title and interest which the said deceased would have had in said property had not the same been mortgaged by said deceased." The record title to this land was in said John H. Ryan, and he had the right to manage and control the land under Code (1881) § 2410, which is as follows:

"SEC. 2410. The husband has the management and control of the community real property, but he shall not sell, convey or encumber the community real estate unless the wife join with him in executing the deed or other instrument of conveyance by which the real estate is sold, conveyed or encumbered; and such deed or other instrument of conveyance must be acknowledged by him and his wife: *Provided, however,* That all such community real estate shall be subject to the liens of mechanics and others for labor and materials furnished in erecting structures and improvements thereon as provided by law in other cases, to liens of judgments recovered for community debts, and to sale on execution issued thereon."

At all times he had the right to have the community property subjected to the payment of the community debts. The "estate of the deceased," so far as the payment of the debts against the community was involved, was the community estate. As to how this debt was originally contracted, or as to the purpose for which it was contracted, does not appear. But as between the mortgagors and the mortgagee it was a community debt, at least to the extent of having it paid from the proceeds of the land mortgaged. So far the community owed it, and no question of a suretyship between the husband and wife, if one should arise, could come up in that proceeding to prevent the sale or alter its effect. The debt may in fact have been a community debt, although it was only the note of the husband. The probate court had jurisdiction of the estate, and the presumption is that the proceedings were regular, and that it found all the necessary facts to sustain its decree. See *Sheldon v. Newton,* 3 Ohio St. 494; Rorer on Judicial Sales (2d

ed.), §§ 314, 315; *Thompson v. Tolmie*, 2 Pet. 157; *Perkins v. Fairfield*, 11 Mass. 227; *Florentine v. Barton*, 2 Wall. 210; *Hurley v. Barnard*, 48 Tex. 83; *Oriol v. Herndon*, 38 La. Ann. 759. At an administrator's sale of real estate the purchaser buys, and is entitled to a conveyance of whatever title there is in the estate. *Nesbit v. Richardson*, 14 Tex. 656. Here it was the community title, and the execution of an imperfect or insufficient deed, if the one in this case could be so held, would not affect or deprive him of his right to the entire premises. See *McBee v. Johnson*, 45 Tex. 634. Code, § 1510, directing the proceedings upon the return of sale being made, is as follows:

"Sec. 1510. If it appear to the court that the sale was legally made and fairly conducted, and that the sum bidden was not disproportionate to the value of the property sold, or if disproportionate, that a greater sum, as above specified, cannot be obtained, the court shall make an order confirming the sale, and directing conveyances to be executed; and such sale, from that time, shall be confirmed and valid."

The order of confirmation made the sale a settled, confirmed and valid one. Independent of the deed, the proceedings in the probate court to and including the order of confirmation, conferred an equitable title, at least, to the entire land upon the defendant. *Miller v. Alexander*, 8 Tex. 36; *Bartlett v. Cocke*, 15 Tex. 471; *Dancy v. Stricklinge*, 15 Tex. 557; 65 Am. Dec. 179; *Rock v. Heald*, 27 Tex. 523; *Lalanne v. Moreau*, 13 La. 431; *Vincent v. Huff*, 4 Serg. & R. 298. Under the code, § 83, subdivision 3, a defendant in an action at law may avail himself of both legal and equitable defenses, and in this case the proceedings had in the probate court as found at the trial, exclusive of the deed, constituted a defense to this action.

The practice heretofore has been to administer upon the entire community property in such cases. It was the evi-

dent intention to do so in this case. The grantee went into the possession of the entire land under the proceedings, and the judgment of the probate court was not appealed from.

Judgment reversed.

ANDERS, C. J., and HOYT and STILES, JJ., concur.

DUNBAR, J. (*dissenting*).—I am unable to agree with the opinion of the majority. It seems to me it is more a forcible argument of what the law ought to be than what it really is. Before the enactment of § 1524 it will not be contended that under such proceeding as was had in this case the purchaser would have taken anything. By virtue of that enactment he takes the identical interest specified by the statute, and nothing more, and no question of economy in the administration of the estate can be taken into consideration in construing it. In fact it seems to me that the provisions of this statute are set out in language so plain and unambiguous that there is no room for judicial construction. The words "which conveyance shall be effectual to convey to the purchaser all the right, title and interest which the *deceased* would have had in the property had not the same been mortgaged by him," seem to my mind to enunciate a plain, straightforward proposition, viz., that the purchaser under the sale obtains the interest of the *deceased*, and not the interest of the deceased and somebody else, no matter whether that somebody else chances to be his partner, his wife, or some other person. The legislative mind might possibly not have conceived the most harmonious or best system of settling estates in the probate court; but when the legislative will is expressed in language plain and unequivocal, no meaning should be attached to it by the court which is not justified by the language, because, in the opinion of the court, it would make a better law and relieve litigants of trouble or expense.

In answer to the complaint of the respondent, that her property was sold away from her without notice, the appellant asserts, and the majority decide, that because this was a proceeding *in rem* no notice except that provided by statute was necessary, and that the court had jurisdiction of all of the property. And many cases are cited to show that where courts have power to sell the estate of intestates, their action operates on the estate and not on the heirs of the estate, and that the sale is a proceeding *in rem*, to which all claiming under the intestate are parties, etc., I raise no question as to the soundness of the doctrine enunciated in those cases, but I insist that under the statute the *res*, or thing which the court had control of, was not the interest which the respondent had in the mortgaged premises, but the interest which the decedent had in it; and under the decisions cited by appellant, doubtless all persons claiming under that interest are parties and entitled only to the notice provided by the statute. But the respondent is not claiming under such interest; she is claiming under her own interest; she gave a mortgage on her interest in the land and that mortgage has never been foreclosed. If it has been sold at all, it has been sold without notice to her; she has not had her day in court, and is, therefore, not bound by any action with reference to it.

But I maintain that her interest in the land never has been sold, and that there was no attempt to sell it either by the probate court or by the administrator. The record shows that they construed the statute according to its plain language and import. In the order of sale the court ordered the administrator, upon the payment of the money, to execute a conveyance to the purchaser which should convey to such purchaser, not all the interest which the mortgagors had in the property, but "all the right, title and interest which the *deceased* would have had in said property had not the same been mortgaged by him."

And, in accordance with said order, the administrator did, on the 18th day of September, 1880, execute, acknowledge and deliver to said purchaser a deed of "all the right, title, interest and estate of the said John H. Ryan, deceased, at the time of his death, and also all the right, title and interest which the said *deceased* would have had in said property had not the same been mortgaged by said deceased." I cannot understand how a deed conveying a special interest mentioned, as this deed does, founded on such an order of sale as this deed was, and based on a statute equally restrictive, can be construed to convey an interest which is not expressed. The right, title and interest which the decedent would have had in the land, if he had not mortgaged it, is conceded to have been an undivided one-half interest; that undivided one-half interest is what the law authorized the court to order sold; that undivided one-half interest is what the court *did* order sold, and what the deed shows *was* sold. It seems to me that the conclusions of law as stated by the lower court flow irresistibly from the facts found in this case, and that the judgment should be affirmed.