## No. 3754

IN THE MATTER OF THE ESTATE OF PAUL CONDOS, WHO WAS ALSO KNOWN AS PAUL A. CONDOS, DECEASED.

FIRST NATIONAL BANK OF NEVADA, RENO, NEVADA, APPELLANT, *v.* ELLEN AGNES CONDOS, RESPONDENT.

## No. 3755

IN THE MATTER OF THE ESTATE OF PAUL CONDOS, WHO WAS ALSO KNOWN AS PAUL A. CONDOS, DECEASED.

ELLEN AGNES CONDOS, APPELLANT, *v.* FIRST NATIONAL BANK OF NEVADA, RENO, NEVADA, RESPONDENT.

Nos. 3754–3755

February 1, 1954.        266 P.2d 404.

*Arthur F. Lasher,* of Reno, for First National Bank of Nevada.

*I. A. Lougaris,* of Reno, for Absent Beneficiaries.

*E. P. Carville* and *Leslie E. Riggins,* of Reno, for Ellen Agnes Condos.

## OPINION

By the Court, MERRILL, J.:

In these two cases separate cross appeals have been taken by the parties from an order of the court below setting apart to Ellen Condos certain property as her share of a community estate. For purposes of expedition the two appeals were consolidated for argument before this court and this opinion will dispose of both matters.

### CASE NUMBER 3754

The question here presented may be stated generally as follows: Where the deceased husband has by will disposed of his share of a community estate and such share is therefore subject to administration, is the widow's share likewise subject to administration?

Paul Condos died August 28, 1952 leaving a widow surviving him, Ellen Condos, the respondent herein. At the time of his death a community estate had been accumulated of a value of $284,000. The decedent left a will disposing of the entire community in trust to provide support for his widow throughout her lifetime and, upon her death, to certain designated charities. By the terms of the will the widow was given an election to consent to

such disposition of the community estate. Should she fail to consent and, instead, demand the share of the community to which she was entitled by law, the decedent's share then went outright to the designated charities. Appellant First National Bank of Nevada was named executor.

The widow elected not to consent to disposition of the entire community and petitioned the court below for an order establishing and decreeing that one-half of the community estate vested in her without administration. An order was made by the court to this effect which also provided, "That the commissions of the Executor can only be calculated and fixed on the personal estate of said Decedent and not on the community property interest of the surviving wife; that the attorney for the estate can only be compensated for the service he renders the estate, and both statutory commissions and attorneys' fees must come from the estate of said Decedent." Further the order directed the executor to deliver to the widow one-half of the estate property "after deducting therefrom a sum sufficient to pay one-half of the debts of said Decedent * * *."

From this order the executor has appealed. It contends that the entire community including the widow's share is subject to administration and to expenses of administration and that the whole thereof should be taken into consideration in fixing compensation for such administration.

The controlling statute is sec. 3395.02, N.C.L.1929, Supp. 1931–1941, which provides in part as follows: "Upon the death of the husband one-half of the community property shall vest in the surviving wife, and the other half is subject to the testamentary disposition of the husband, and in the absence of such disposition goes to his surviving children equally, and in the absence of both such disposition and surviving children, the entire community property shall vest without administration in the surviving wife, except as hereinafter provided, subject, however, to all debts contracted by the

husband during his life that were not barred by the statute of limitation at the time of his death; * * *. In case of the dissolution of the community by the death of the husband, the entire community property is equally subject to his debts, the family allowance, and charges and expense of administration; *provided, however,* that if in the absence of said testamentary disposition the surviving wife and children, and in the absence of such children, the wife shall pay or cause to be paid all indebtedness legally due from said estate, or secure the payment of the same to the satisfaction of the creditors of said estate, then and in such case the said community property shall not be subject to administration."

The question presented involves several problems which may be attacked consecutively. Since it appears that the entire estate was community property, we are not faced with the question of the liability of the community for the expenses of administration of the husband's separate estate. Many additional questions with reference to the administration of community estates are suggested by the matters here considered and the temptation to explore and attempt in anticipation to settle them is indeed great. We do, however, confine ourselves strictly to those questions which we feel are necessary to the present appeal and reflect directly upon those actions of the lower court assigned as error.

*First:* Regardless of whether the widow's share is itself subject to administration, is it subject to any charges other than those specified by the court below, i.e., debts of the decedent?

In this respect the quoted statute is explicit to a point where, in our view, there is no room for interpretation. It provides: "In case of the dissolution of the community by the death of the husband, the entire community property is equally subject to his debts, the family allowance, and charges and expense of administration." The lower court was then in error in releasing the widow's community estate from its proportionate share of the

expenses of administration. To determine what those expenses may properly include we must, however, inquire further.

*Second:* Is the widow's share itself subject to administration?

It should be noted that the quoted section in one instance expressly makes use of the phrase, "without administration." In one instance it expressly provides that "the said community property shall not be subject to administration." The preceding section respecting the rights of a husband upon death of the wife provides in part, "Upon the death of the wife the entire community property shall vest without administration in the surviving husband, * * *." In contrast, the provision of sec. 3395.02 with which we are here concerned reads, "Upon death of the husband, one-half of the community property shall vest in the surviving wife." Conscious as the legislature apparently was of the significance of the phrase "without administration" and of the desirability of making express use of it in certain instances, it was omitted in this instance. Was that omission significant? We feel that it was. The legislature appears to have recognized that save in those cases expressly mentioned, court supervision and control are essential to orderly procedure and to afford full protection to all concerned.

Upon this question, we conclude that the entire community under the circumstances of this case is, by statute, made subject to administration.

*Third:* To what manner of administration is the widow's share then made subject?

Certainly it is not a decedent's estate. Respondent points out that under the established law of this state the community interest of the wife is not a mere expectancy but vests upon acquisition of the community property. She then contends that upon death of the husband the share of the wife is property already vested in a living person, as much so as the interest of a tenant in

common or joint tenant and therefore is no more subject to administration than such interests would be.

We recognize that in this state a wife's interest in community property vests upon the acquisition of such property by the community. In Re Williams' Estate, 40 Nev. 241, 161 P. 741, L.R.A. 1917C, 602; Petition of Fuller, 63 Nev. 26, 159 P.2d 579. It should be clearly understood that by this decision we have no intention of departing in the slightest from that well established principle. The vesting of that interest, however, does not carry with it the rights of exclusive possession or control. As stated in 1 de Funiak, Principles of Community Property, 573, sec. 203: "Such statutory provisions as those that upon the death of the husband one-half of the community property 'goes' to or 'vests' in the wife, cannot mean that the ownership thereof 'goes' to or 'vests' in the wife for the wife already had such ownership from the moment of acquisition of the community property during the marriage. What does 'go' to or 'vest' in the wife is that which she did not have before, the administrative control of her one-half of the community property which prior to his death was in the husband's hands, and represents merely an administrative matter."

The nature of "administration" as that word is used in relation to a community estate is pointed out in 1 de Funiak, supra, 581, sec. 205. With reference to the provisions of Spanish law the author states, "Where the husband was the deceased spouse, the liquidation of the affairs of the marital partnership might be carried out during the administration of his own estate. But the administration of the community estate would have to be separate from, if not prior to, the administration of the separate estate of the deceased husband, and separate accountings made, etc. It was quite true that immediately upon the death of a spouse, the heirs of that spouse immediately obtained title to that spouse's share of the community property; likewise, those heirs

and the surviving spouse became entitled to have the community property partitioned between them. Such rights were present and effective rights without the necessity of administration to confer them, in the sense that we think of the necessity of administration and of a decree of the proper court setting over to heirs their distributive shares. * * * The point is that the title of the heirs was not dependent upon administration in order to vest title in them, and the right of partition existed without an administration to confer it. But it is to be recognized that community obligations had to be paid before it could be determined how much community property existed which could be partitioned. To that extent there had to be an 'administration' of the community estate. It might also be necessary to separate the separate property from the community property. * * * There was the necessary termination of pending transactions, the satisfaction of community obligations, and the division of the residue of the community property to be accomplished."

Later, in the same section, supra, page 583, with reference to the statute law of the community property states, it is said, "In some of the states administration of the community property takes place whether it is the husband or the wife who dies. * * * In others of the states administration of the community property is required where it is the husband who dies, but not where the wife is the deceased spouse and dies intestate as to her share of such property. This is particularly true in those states where the wife takes over control of her share of the community property on the death of the husband and the husband has the right of testamentary disposition of his share, but the wife has no testamentary right to dispose of her share which goes to the husband if she dies first."

The author points out that courts have sometimes confused the nature of "administration" of a community estate and have overlooked "the fact that administration

of community property is a thing apart from ordinary administration, in that it is actually settling up matters relating to property which belongs in equal shares to the decedent's estate and to a living person and not merely the administration of property belonging entirely to the decedent's estate."

It is, therefore, clear that the fact that the property belongs to the wife is not inconsistent with its administration, as that term must be construed to have been used in sec. 3395.02. We conclude that the entire community, in such a case as this, is subject to administration to the extent necessary to settle the marital affairs and discharge the obligations against the community, to ascertain the extent of the respective moieties which remain after such settlement and discharge and to accomplish a partition or division of the estate into such moieties. It is apparent that, save for the significance of the question of ownership, the functions performed by the court and by its administrative officer in administering a community estate are not unlike the functions performed in administering an intestate decedent's estate.

This in our view disposes of respondent's contention that to subject the estate of the wife to charges for the administration of the estate of the husband is to take property without due process of law in violation of constitutional provisions. As we have seen, the scope of the court's administration includes authoritative action upon the entire community: the estate of the wife as well as that of the husband.

*Fourth:* By what means is this administration to be had? It is clear that authoritative court action is necessary. Can or should jurisdiction over the community estate be taken by the probate court? Are the procedures provided by our statute relative to estates of

deceased persons available for administration of a community estate one-half of which is vested in a living person?

In some community property states it is expressly provided by statute that separate administration of the community estate shall be had, with the survivor acting as administrator. In Nevada no procedure whatever is expressly provided for the administration of a community estate. Yet, as we have indicated, administrative action under court supervision is anticipated by the statute. Some process must be made available.

It is urged by respondent that the jurisdiction of the probate court is limited to administration of estates of deceased persons; that it has no jurisdiction whatsoever to administer the estates of living persons. This proposition is stated in McKay on Community Property, 2d ed., p. 950, sec. 1466 as follows: "As usually constituted, courts of probate have jurisdiction over the estates of dead persons only 'and can distribute only to heirs, devisees or legatees, or to those claiming through them.' In the absence of statute they have no jurisdiction over the property of living persons, though there would seem to be no constitutional objection to conferring on such courts a limited right to administer property, a share or interest in which is drawn within the jurisdiction of the court by the death of the owner of such share or interest. Instances are found in statutes conferring on probate courts jurisdiction to administer the entire property of a commercial partnership, on the death of one of the partners; and no doubt it is within the constitutional competency of the legislature to extend the jurisdiction of the probate court over the property of the community on the death of one of its members."

In the absence of action by the legislature expressly establishing a separate and distinct administrative procedure, may it be said that in cases such as this, where administration is required, sec. 3395.02 impliedly confers

jurisdiction upon the district court in probate to administer community estates? Such apparently has been the general conclusion of courts of other states under similar circumstances based upon practical considerations. La Tourette v. La Tourette, 15 Ariz. 200, 137 P. 426; Swinehart v. Turner, 44 Ida. 461, 259 P. 3; Ryan v. Ferguson, 3 Wash. 356, 28 P. 910, 912.

In Ryan v. Ferguson, supra, it is stated, "In administering upon the estate of the deceased member, community debts are proper charges against the same. The interest of the surviving member in the community property must be subjected to its just share of this indebtedness in some manner. If this whole property was not under the jurisdiction of the probate court, under the circumstances of this case, the interest of the survivor could not be made to respond to any part of these claims in the administration proceedings. Can it be said that it is the intent or policy of the law that creditors must prove their claims against the community in the probate court, in the first instance, in order to reach the interest of the deceased member in the community property, and in case of a deficiency be driven to another forum to reach the half interest of the surviving member in that same property, equally liable for that same debt? Or that, where the interest of the deceased in such property has borne an undue share of these debts, that the heirs of such member should be compelled to bring an action against the survivor for a contribution? The law abhors a multiplicity of suits." Later the court states, "The statute says one-half shall go to the survivor subject to the community debts; and, from the very nature of the case, it is held in abeyance or suspended to that extent, and cannot go until these matters are determined and disposed of, and that which is to go is thus ascertained. Otherwise, it would relegate the simple, straightforward proceeding of administering upon the whole property to the awkward and involved one, to say the least,—even if there was any authority for it,— of administering

upon the interest of the deceased in such property. No way is pointed out in which to obtain a partition or division of it as a preliminary step, or for obtaining possession thereof, as in the case of a partnership. It seems to us that it is the intention of the law that upon the death of either spouse the whole community estate is subject to administration for the payment of community debts and for distribution. As to what authority an executor would have over it, we do not decide; but the whole community property would necessarily be brought under the jurisdiction of the court, and disposed of in some manner."

In Swinehart v. Turner, supra, the rule is stated, "On the death of either spouse, the community property being liable for the community debts, the administration of the estate draws to it the liquidation and settlement of the entire community estate for the purpose of satisfying the community debts, which makes it necessary for the probate court to assume jurisdiction over and administer both moieties of the community fund."

The holding of the courts in this respect has been criticized, and the necessities which the courts have apparently regarded as controlling have been characterized as apparent rather than real. See: McKay on Community Property, p. 960, sec. 1473. However, the fact remains that in absence of statute providing specific procedures for the administration of community estates, the courts uniformly appear to hold that administration by the probate court in conjunction with the administration of the decedent's estate is proper. We see no good reason to depart from this rule. Indeed to require independent administration of a community estate preliminary to the administration of the husband's share thereof might well prove comparatively cumbersome and expensive.

We therefore construe sec. 3395.02 as authorizing the district court in probate to administer the community estate in its entirety where such administration is necessary under the statute.

An examination of the order of the lower court in the light of our conclusions thus far is enlightening. To the lower court its action constituted a setting apart without administration; an exclusion from the decedent's estate of property which had no business to be there. This, however, is to disregard the distinction between the two administrations contemporaneously being had: administration of the community estate which, as the authorities have pointed out, can hardly be accomplished by halves; and administration of the decedent's estate which can hardly be had until the decedent's moiety authoritatively has been established.

Actually the court by its order has in effect directed the executor to accomplish a division and partition of the community estate into its respective moieties and, impliedly, to account to the court therefor. While disclaiming the need for or propriety of administration of the community on the one hand, it has in effect entered upon it on the other.

*Fifth:* Shall the widow's moiety be included in the estate for the purpose of fixing fees for services rendered to the community?

In our view the conclusions we have already expressed provide the answer to this question. The entire community is being administered by the court. Essential functions are being performed by the court on behalf of the entire community in the settling of marital affairs and division of the estate. The executor as administrator of the community estate is performing the services necessary to the accomplishing of these ends. As we have noted, save for the significance of questions of ownership and vesting of title, such services are not unlike those performed on behalf of a decedent's estate. The executor in performance of his services to the community is accountable for the entire estate. Its services are clearly subject to compensation. The fixing of fees, then, must take into consideration the entire community

and the services performed on its behalf in its administration. Likewise the burden of compensation for such services should fall upon the entiré community and not solely upon the moiety of the decedent.

Upon this appeal the lower court is reversed and the matter remanded (1) with instructions that the order appealed from be set aside and (2) for such further proceedings not inconsistent with this opinion as may in the judgment of the court be proper. Appellant is awarded its costs.

### CASE NUMBER 3755

The question here involved is whether the lower court erred in rejecting the contention of the widow, Ellen Condos, that certain bonds formed no part of the community estate but were hers by virtue either of gift or of joint tenancy survivorship.

The bonds in question, $12,000 in United States treasury bonds payable to bearer, were, at the time of death, in a safe-deposit box to which both parties jointly had access. They had been purchased by decedent in 1943 and 1944 and were placed in the box by Mrs. Condos in May, 1952. Mrs. Condos contended in the alternative that although the bonds originally had been community property (1) the husband's community interest had been given to her by him in May, 1952; or (2) they had been transformed from community property into property held in joint tenancy with right of survivorship. She petitioned the court to set aside the bonds to her as her separate property.

The lower court determined that the bonds were community property and, by the same order attacked by the appeal in the preceding case, ordered Ellen Condos to deliver to the executor "one-half of said bonds together with the accrued interest thereon." From this order Ellen Condos has taken this appeal.

In its written opinion upon this point the lower court stated: "The Court has carefully considered [the evidence] and is satisfied that it does not meet the legal

requirements of delivery with intent to pass title. At the most it creates a weak inference which is insufficient to rebut the presumption that the bonds are community property." In our view this decision should be sustained.

Upon the first alternative—that the husband's community interest had passed to the wife by gift—the evidence was confined to testimony of two witnesses as to declarations made by the decedent. The first witness testified to a conversation had with the decedent in June or July, 1952. Referring to the decedent he stated: "He told me about his will and he told me he set up a trust fund but everything inside the safe deposit box would go to the wife and the joint account—but the rest was put in the trust fund. * * * He said [the government bonds] belonged to his wife."

The second witness testified to a conversation with the decedent in August, 1952. In the presence of Mrs. Condos the decedent had urged the witness to persuade Mrs. Condos to sell "her" bonds and invest in stocks.

The declarations are not factual; are not of what decedent had done. Rather they are, by implication, of what he thought or assumed or, perhaps, intended to do in the future. Clearly there is no proof of delivery or intent. Any inference thereof which may be drawn is, indeed, weak. We cannot regard as error failure of the lower court to attach to it weight sufficient to meet the burden of proof.

Upon the second alternative, that a joint tenancy had been created, the evidence is, if anything, even weaker. Two points are asserted:

(1) The bonds at the time of decedent's death were in a bank safe-deposit box held by the parties under joint tenancy agreement with the bank. That agreement in effect provided that each party individually, without notice to or consent of the other, had rights of access to the box, of its surrender and to remove its contents. By the overwhelming weight of authority such an agreement, required by the bank as a matter of practice for

its own protection, cannot in and of itself constitute a creation of a joint tenancy in the contents of the box. See Annotation: 14 A.L.R. 2d 948, 954; Accord: Stephens v. First National Bank of Nevada, 65 Nev. 352, 196 P.2d 756.

(2) In decedent's personal ledger and statement of assets the bonds were described by decedent as "U. S. bonds (Paul Condos or Ellen Condos)." They were not expressly declared to be in joint tenancy. It is impossible to read from the notation an intention on the part of the decedent to create a joint tenancy by the notation or by the use of the word "or". The wife was not a party to it. The notation most clearly falls far short of constituting or evidencing a transfer or agreement. Newitt v. Dawe, 61 Nev. 472, 133 P.2d 918, 144 A.L.R. 1462.

Subject to the decision and order entered in the preceding case, the lower court is affirmed upon this appeal. Respondent bank is awarded its costs.

EATHER, C. J., and BADT, J., concur.