[No. 4612.    Decided August 8, 1903.]

BANK OF MONTREAL, *Appellant,* v. JAMES A. BUCHANAN, *Respondent.*

EXECUTORS — EXECUTION OF RENEWAL NOTES — LIABILITY OF COMMUNITY ESTATE.

A community estate would not be rendered liable by the execution of renewal promissory notes by one of the spouses after the death of the other, whether such notes were executed in his capacity as executor or as a survivor of the community.

SAME — ACTION ON CLAIMS — LIMITATIONS.

The limitation in § 4798, Bal. Code, against right of action upon contracts in writing after the expiration of six years is not extended in case of the death of a debtor by the provisions of Id., §§ 6226, 6228, requiring notice to creditors and the presentment of claims within one year thereafter, as the latter sections give that right only to claims not already barred by the general statute of limitations.

SAME — RIGHT OF ACTION AGAINST DECEDENT'S ESTATE.

An action may be commenced against the personal representative of a deceased debtor, even after the statute of limitations

has run against the debt, under Bal. Code, § 4810, which provides that "if a person against whom an action may be brought die before the expiration of the time limited for the commencement thereof, and the cause of action survives, an action may be commenced against his representatives after the expiration of that time, and within one year after the issuing of letters testamentary or of administration."

SAME — QUALIFICATION OF EXECUTOR — ISSUANCE OF LETTERS — ACTIONS AGAINST — WHEN BAR BEGINS TO RUN.

Under Bal. Code, § 6200, an executor is qualified to act as such and take charge of the estate when his bond is filed, whether letters testamentary have been issued or not, and hence the running of the year allowed by Id., § 4810, for the commencement of action against the executor would date from the time of his qualification, although letters were not issued until a subsequent date.

SAME — LACHES OF CREDITOR — NOT EXCUSED BY EXECUTOR'S NEGLECT OF DUTIES.

The fact that an executor failed to proceed with the administration of an estate would not excuse a creditor who allowed his claim to become barred by reason thereof, inasmuch as the creditor had a remedy under Bal. Code, §§ 6167, 6168, whereby he could have enforced administrative proceedings.

Appeal from Superior Court, San Juan County.—Hon. GEORGE A. JOINER, Judge. Affirmed.

*Fitch & Harris,* for appellant:

The new notes bear the same relation to the community property as did the old notes. Mr. Buchanan desired to pay the indebtedness without resorting to a sale of the real estate. He thought that if given time he would be able to do so, and thus preserve the real estate intact for the heirs. The extention was accordingly given and the new notes executed. They can in no sense be regarded as payment of the former, in the absence of an agreement to that effect. *First National Bank v. Lesser,* 58 Pac. 345 ; *Smith v. Smith,* 35 Pac. 697 ; *Holland Trust Co. v. Waddell,* 26

31-32 WASH.

N. Y; Supp. 980; *Albright v. Griffin,* 78 Ind. 188; *Miller v. Hilton,* 88 Me. 429; *Boston National Bank v. Jose,* 10 Wash. 185; *North v. Walker,* 66 Mo. 453; *West v. Brison,* 99 Mo. 692. Mr. Buchanan had the power to bind the community by the execution of his extension notes during coverture without the knowledge or consent of his wife. *McKee v. Whitworth,* 15 Wash. 536. Manifestly, therefore, he had the power to do so after her death, where it was done in the direct interest of the community estate. "A second note given by a husband after the dissolution of the community by the death of his wife in renewal of a note which he had given before the dissolution of the community is not such a novation of the first note as will prevent the payee from enforcing its payment out of the community property." *Turner v. O'Neal,* 24 La. An. 543; *Rusk v. Warren,* 25 La. An. 314; *National Exchange Bank v. Wilgus Ex'r's,* 25 S. W. 2; *Bank of Louisiana v. Dejean,* 12 Rob. 16. The power possessed by a surviving husband or wife who qualifies to administer a community estate is much broader than that possessed by an ordinary administrator; and what such survivor may legally do in the exercise of that power will bind the estate. *James v. Turner,* 78 Tex. 241.

Appellant could not bring its action until the claim had been presented to the executor and by him rejected; and it was not required to present its claim until notice to creditors had been published. Where such notice had not been published, a claim would not be barred by any failure to present it. *Quivey v. Hall,* 19 Cal. 98; *Donnerberg v. Oppenheimer,* 15 Wash. 290; *McFarland v. Fairlamb,* 18 Wash. 606.

*Jesse A. Frye* and *Thomas D. J. Healy,* for respondents.

The opinion of the court was delivered by

HADLEY, J.—The appellant brought this suit and alleged that on November 25, 1890, James A. Buchanan and Mary E. Buchanan, his wife, were indebted to E. Bennett & Son in the sum of $1,680, and that as evidence of such indebtedness the said James A. Buchanan executed and delivered to said E. Bennett & Son three promissory notes, each for $560, maturing respectively on the 1st day of May in the years 1892, 1893, and 1894, which notes were afterwards transferred to appellant; that on or about June 22, 1892, said Mary E. Buchanan died, leaving a last will whereby the said James A. Buchanan was nominated as executor; that, on the 7th day of February, 1893, by an order of the superior court of San Juan county, said will was admitted to probate, and said James A. Buchanan was appointed as executor of said estate; that in accordance with the terms of said order he filed his bond as executor, but neglected to take out letters testamentary until the 7th day of May, 1901, and did not publish notice to creditors until May 16, 1901; that on the 13th day of August, 1897, said James A. Buchanan, for a valuable consideration, executed and delivered to appellant his three promissory notes for $500 each, the same aggregating the full amount unpaid on the notes first above mentioned, and maturing respectively in one, two, and three years from date; that the last named notes were intended as renewals of the first ones; that during the time intervening between the maturity of the original notes and the said 7th day of May, 1901, appellant was negotiating with said James A. Buchanan for a settlement of said indebtedness, and that he repeatedly promised to pay the same,

stating that he desired to settle the claim without administering upon the estate, as he wished to avoid the expense of administration; that on July 18, 1901, the claim evidenced by said renewal notes, duly verified as required by law, was presented to said James A. Buchanan, as executor, and the same was indorsed as rejected. Judgment is demanded against James A. Buchanan, both as an individual and as executor, for the amount of such renewal notes, together with interest, attorney's fees, and costs. James A. Buchanan, as executor, separately demurred to the complaint, on the ground that it does not state facts sufficient to constitute a cause of action, and also that the action is barred by the statute of limitations. The demurrer was sustained, and the cause dismissed as against the executor. This appeal is from that judgment.

It is suggested that the renewal notes declared upon in the complaint could have been signed by James A. Buchanan in but three possible capacities, viz., as an individual, as executor, or as survivor of a community. If the notes were signed by him in his individual capacity, then in that capacity only is he liable. The renewal notes did not purport upon their face to bind the estate, but in form appear to be the individual notes of James A. Buchanan. If, however, he undertook to sign them and intended to execute them in the capacity of executor, did they become obligations against the estate?

"An executor or administrator cannot impose any liability on the estate by making, drawing, accepting, or indorsing any bill or promissory note, though he has authority to indorse negotiable instruments for the purpose of transferring the decedent's title, when a transfer is necessary or proper. But such indorsement operates no further, so far as the estate is concerned, than to effect a transfer of title, and any liability which may arise on the

indorsement is the personal liability of the executor or administrator." 11 Am. & Eng. Enc. Law (2d ed.), p. 936.

Numerous decisions are cited in support of the above. It follows that the renewal notes, though the maker may have intended to execute them in the capacity of executor, did not create any new obligation against the estate, and its liability was not thereby enlarged. If the maker be considered as having executed the notes in the capacity of a survivor of a community, the same result follows. In this state, upon the death of either spouse, the entire community estate is subjected to administration. *Ryan v. Fergusson,* 3 Wash. 356 (28 Pac. 910); *Lawrence v. Bellingham Bay, etc., R. R. Co.,* 4 Wash. 664 (30 Pac. 1099). The estate could not, therefore, be at one and the same time under the control of the executor and also of the survivor of the community as such. Moreover, the community no longer exists after the death of one of the spouses, but its estate is simply held intact by administrative proceedings for the purpose of paying indebtedness created during its existence. The entity called the "community," is immediately dissolved upon the death of one of its members, and is in law as effectually dead as a deceased individual. What may be done by a survivor must therefore be done as an individual, and not as representing the community. As an individual the survivor can not enter into obligations binding upon the estate of the dead community. Viewed, therefore, from either of the three standpoints mentioned above, the renewal notes, considered as new and distinct obligations or contracts, are without force as against the estate. They were executed after an executor had charge of the estate, after the death of the community, and by their terms matured long after their date.

The allegations of the complaint are perhaps broad enough to be treated as declaring upon the indebtedness represented by the original notes. That indebtedness was created during the existence of the community. If the complaint be treated as based upon the original notes and the indebtedness of which they were evidence, we must next inquire if this action is barred by the statute of limitations. The general statute of limitations applicable to said notes provides that the action should have been brought within six years. Section 4798, Bal. Code. The last of the notes matured May 1, 1894, and the complaint in this action was verified May 2, 1902. It is clear, therefore, that the action is barred, unless the running of the statute has for some reason been suspended. It is argued by appellant that the death of Mary E. Buchanan and the subsequent administrative proceedings had that effect. It is insisted that the general statute of limitations no longer applied, but that the right to maintain the action was thereafter controlled by administrative statutes. Under the latter an executor or administrator is required to publish a notice to creditors, and claims must be presented within one year after the first publication of the notice, or they are barred. §§ 6226, 6228, Bal. Code. The appellant urges that until a notice to creditors was published it was under no obligation to move toward the enforcement of its claim, and that, since it promptly presented its claim after such notice was published, and followed with this suit, it is within the probate provisions above cited. The argument of appellant leads to the conclusion that the one year period fixed by the probate law for presenting claims has the effect to extend the general statute of limitations. We do not think it can be said to have that effect. It was rather intended merely to fix

a time within which claims not already barred by limitation statutes shall be presented. Whatever may operate to affect the general statute of limitations as against estates must be by virtue of § 4810, Bal. Code. That section provides:

"If a person against whom an action may be brought die before the expiration of the time limited for the commencement thereof, and the cause of action survives, an action may be commenced against his representatives after the expiration of that time, and within one year after the issuing of letters testamentary or of administration."

Thus it will be seen that an action may be commenced against the personal representatives even after the statute of limitations has run. But it must be commenced within one year from the issuing of letters testamentary. Appellant concedes in its brief that under § 6200, Bal. Code, the executor was qualified to act as such, and take charge of the estate when he filed his bond. It is also conceded, and authorities are cited by appellant to the effect, that an executor derives his authority from the will, and that confirmation by the court, followed by filing the bond, is equivalent to taking out letters, the letters being but the authentic evidence of the power conferred by the will. It follows that this administration began in February, 1893, and § 4810, *supra,* therefore, affords appellant no relief in this case, since any extended right of action thereunder must have been limited to the year following the beginning of said administration. However, the statute had not then fully run against any of the indebtedness, and it could have been enforced long afterwards before the period of limitation expired.

The appellant alleges that the executor neglected to proceed with the administration, that it was meanwhile negotiating with him for the settlement of its claim, and that

he repeatedly promised to pay it. While this may be true, yet appellant was during all that time chargeable with the knowledge of its legal rights, and was also bound to know that the statute of limitations was constantly running against its claim. Having allowed the period of limitation to expire, its claim was thereafter barred. If the executor neglected his duty in failing to proceed with the administration, that was no reason why the appellant should remain idle and allow the statute to continue to run against its claim. The administration was initiated in 1893, eight years before appellant made any move to force the executor to proceed with the discharge of his trust. The complaint alleges that in May, 1901, appellant instituted proceedings to compel the executor to proceed, and that as a result thereof he did proceed with the administration. Such steps might have been taken by the appellant long before, and when no question as to the statute of limitations could have arisen. Under §§ 6167 and 6168, Bal. Code, the appellant could have brought to the attention of the court the fact that the executor was neglecting his duties, which must have led either to the discharge of his duties or to his removal and a new appointment. The appellant at all times had a clear remedy, and any inducements that may have led to the postponement of the use of the remedy did not affect the running of the statute of limitations.

We conclude that the demurrer was properly sustained, and the judgment is affirmed.

FULLERTON, C. J., and ANDERS and MOUNT, JJ., concur.