[No. 15706.  Department Two.  April 5, 1920.]

*In the Matter of the Estate of* ANNA THOMPSON.[1]

EXECUTORS AND ADMINISTRATORS (105) — APPEAL (87) — PARTIES ENTITLED—HEIR ASSIGNING INTEREST. An heir who assigned to the administrator all her interest in the estate in consideration of an agreement to pay her a sum equal to her proportionate share on final distribution, has no such interest in the estate as to be entitled to appeal from the final settlement allowing claims and distributing the estate, her remedy being solely on her contract.

SAME (86)—ALLOWANCE—BY COURT—ORDER. An order approving an administrator's final account showing the payment of certain allowed claims, is sufficient as an allowance of the claims by the court.

SAME (81-1) — PRESENTATION AND FILING — PRESUMPTION AS TO TIME. Where claims against an estate were allowed within the six months period for presenting claims, it will be presumed that they were filed before they were allowed, although there was no record of the time.

SAME (81-1)—PRESENTATION AND FILING—NECESSITY OF TIMELY FILING IN COURT—STATUTES. Under Laws of 1917, p. 762, requiring claims against an estate to be served on the administrator and filed with the clerk within six months, and providing that if they are not so filed they shall be barred, claims presented and allowed within six months, not filed with the clerk of the court until three months after the statutory six months period had expired, are barred and it is error to order their payment.

SAME (86)—ALLOWANCE—PROOF—SUFFICIENCY. A finding that two claims had been filed, allowed and paid, cannot be sustained where the record fails to show either of them, and they had never been filed.

SAME (102)—ORDER OF DISTRIBUTION—LIEN FOR EXPENDITURES. In directing final distribution of the estate in probate, the court has no power to charge the estate distributed to the heirs with a lien in favor of the administrator on account of money paid out by him for the benefit of the estate.

Appeal from a judgment of the superior court for Adams county, Truax, J., entered June 9, 1919, approving the final report of an administrator and dis-

[1]Reported in 188 Pac. 784.

tributing an estate, after a hearing before the court. Modified.

*Cannon & Ferris* and *Henry L. Kennan,* for appellants.

*G. E. Lovell* and *C. W. Rathbun,* for respondents.

BRIDGES, J.—About April 1, 1918, Anna Thompson died intestate, near Ritzville, in Adams county, Washington. Her husband, Richard N. Thompson, and nine children survived her. Most of the property involved was community property. Richard N. Thompson was appointed administrator of the estate. The notice to creditors required claims to be served on the administrator and filed in the office of the clerk of the county within six months after August 15, 1918. The administrator filed his inventory and appraisement, showing the value of the real and personal property of the estate to be $26,541. The state tax commissioner took exceptions to the appraisement and a hearing was had, resulting in some minor alterations. During the course of administration, a portion of the personal property was sold for $7,615. None of the real estate was disposed of. On May 7, 1919, the administrator filed his final account and petition for distribution, wherein the property of the estate was described and the heirs named. This report shows that the following claims had been filed and allowed:

| | |
|---|---:|
| Esther C. Haight | $   283.00 |
| Dr. F. R. Burroughs | .355.00 |
| First National Bank of Ritzville | 15,386.00 |
| J. S. Travis | 330.00 |
| Francis Tinnell | 481.85 |
| Mary A. Burnham | 2,323.00 |
| Mary M. Stevens | 3,888.00 |
| Henry Kaufman | 521.10 |
| Total | $23,243.45 |

It was further shown that the expenses of administration, including attorneys' fees and compensation for the administrator, were $1,679, and that these had been assumed by the administrator personally, and that all of the bills, other than the expenses of administration, had been paid in full in the following manner: By proceeds of the estate in the sum of $7,865, and money advanced personally by Richard N. Thompson in the sum of $15,480.45. The report asks that the property be distributed to the various heirs entitled to the same, subject to a lien thereon in favor of Richard N. Thompson in the sum of $17,159.45. The last named sum is made up of the money advanced by Thompson from his individual estate to pay debts and the expenses of administration assumed by him.

On the 2d day of June, 1919, the court made a decree approving the final report and distributing the remaining estate. This decree adjudges that all of the claims heretofore mentioned "have been filed and allowed" and that they have been fully paid, and that, in order so to do, Thompson has advanced from his individual estate $15,703.45. The decree then proceeds to distribute the property among the various heirs, "subject, however, to the lien, charge and claim of Richard N. Thompson for the sum of $17,382.45 for moneys advanced and expenses paid for and on behalf of said estate by said administrator, which said sum is hereby specifically decreed to be a charge and lien upon and against each and all of the property herein described, both real and personal, in the same proportion as is the said property hereby distributed."

Myrtle V. Edgington, a minor, acting through her guardian, and Belva Gillette, two of the heirs, have appealed.

During the course of administration, the appellant Belva Gillette, by an instrument in writing, set over to Richard N. Thompson all her right, title and interest in and to her mother's estate, and at the same time she and Thompson entered into a written agreement whereby the latter agreed that, upon the distribution of the estate, he would pay to her "a sum equal to what her proportionate share therein (the estate) would have been had said assignment not have been given, the value of said share of said party of the second part (Belva Gillette) to be based upon the appraised value of the property belonging to the said estate, less the debts allowed against said estate and paid by the party of the first part, either individually or as administrator of said estate, together with the costs and expenses of administration."

We do not think the appellant Belva Gillette has any such interest in the estate as would entitle her to maintain this appeal. She had completely disposed of her interest in the estate and was no longer an heir and could not legally be interested in the probate matter. Her contract with Thompson provided for the compensation she should receive. It was a private matter and the probate court was neither bound nor entitled to in any manner consider it. Her remedy is solely on her contract.

However, the appeal of Myrtle V. Edgington, the minor, presents questions of moment. Her chief objections to the final decree, from which she has appealed, are that the court allowed the administrator to take credit for having paid a number of claims which were never filed or allowed as required by law, and that the court was not authorized to impose a lien in favor of Thompson against the property distributed to her.

Section 107 of the probate code, Laws of 1917, page 762, provides that every administrator shall publish, for a designated time, a notice requiring all persons having claims against the estate "to serve the same on the executor or administrator or his attorney of record, and file with the clerk of the court, together with proof of such service, within six months after the date of the first publication of such notice . . . If a claim be not filed within the time aforesaid, it shall be barred. . . ."

The date of the first publication of this notice was August 15, 1918. The time for filing claims would expire on February 15, 1919. From the record it would appear that the claim of Henry Kaufman for $500 and interest was presented to the administrator and filed with the clerk of the court within the statutory period, and was duly allowed by the administrator and the court. The claim of Mary A. Burnham for $2,323.25, and that of Mary M. Stevens for $3,888, were allowed by the court and the administrator within the statutory period, but the record fails to show when those claims were filed. Both of these claims were allowed by the court and the administrator on November 2, 1918, well within the six months' period, and the record being silent as to when the claims were actually filed, we must presume that they were filed prior to their allowance by the court and administrator, and therefore filed within the six months' period.

The claims of Francis Tinnell, J. S. Travis, and First National Bank, aggregating $16,197.85, were served upon and allowed by the administrator within the six months' period, but all of them were filed with the clerk on May 8, 1919, being nearly three months after the statutory period of six months had expired. It is argued that these last named claims were not allowed by the court, but we think the order approving

the final report was sufficient for that purpose. But while they were presented to the administrator within the statutory period and allowed, both by him and by the court, they were not filed with the clerk of the court until the expiration of the six months' period. The question, therefore, to be determined is, whether or not those three claims were properly allowed and paid. We are forced to the conclusion that they were not. The statute expressly requires that all claims shall be filed with the clerk of the court, together with proof of service upon the administrator, within six months from the date of first publication of notice to creditors, and that, if not so filed, they shall be barred. To hold that these claims which were filed on May 18, 1919, were properly allowable and properly paid, would be to read out of the statute express and explicit provisions thereof.

The old probate code provided that claims shall be presented within one year to the executor or administrator, and if not so presented they shall be barred. Construing that provision of the code, this court has a number of times held that claims not presented to the administrator within the statutory period could not be allowed or paid, and that the executor or administrator could not waive this requirement of the code. *Ward v. Magaha,* 71 Wash. 679, 129 Pac. 395; *Seattle Nat. Bank v. Dickinson,* 72 Wash. 403, 130 Pac. 372; *Bank of Montreal v. Buchanan,* 32 Wash. 480, 73 Pac. 482; *Empson v. Fortune,* 102 Wash. 16, 172 Pac. 873; *Harvey v. Pocock,* 92 Wash. 625, 159 Pac. 771. These cases are exactly in point on the question under discussion. The presentation of the claims in dispute here was probably sufficient under the old probate code, because that code did not require the claims to be filed within any definite period. The purpose of the new code, in requiring claims to be filed with the county

clerk within a definite period, is manifest. It is well known that many disputes and controversies arose under the old code as to whether a claim had been presented to the administrator within the statutory period. The provision in the new code requiring claims to be filed with the county clerk was for the express purpose of avoiding these controversies and disputes. We must hold that the new code, requiring claims to be filed within six months, means just what it says. To hold otherwise would be to nullify the change of the old code and to cast aside the purpose and benefit sought to be accomplished by the change. The respondent, however, argues that the court found that these claims had been filed and allowed, and that this court should therefore conclude that the lower court must have had testimony before it showing that the claims were filed within the six months' period. In the first place, the lower court did not find that the claims had been filed within the statutory period. He simply found that they had been filed, which, of course, was a fact. The record affirmatively shows that they were filed on May 8th. We cannot presume that the record does not speak the truth, in the absence of some showing to that effect.

The claims of Esther C. Haight for $283, and F. R. Burroughs for $355, are in even a worse plight. The record fails to show either of these claims. They have never been filed. The only mention of them is first in the final report, where they are listed with the other claims and where it is said that they, together with the others, have been paid, and next in the order approving the final report, where they are likewise listed with the other claims, and the court finds that they, together with the other claims, have been filed, allowed and paid. It requires no argument

to show that these two claims cannot be considered as valid claims against the estate.

We hold that the administrator was entitled to take credit for having paid the claims of Mary A. Burnham for $2,323, Mary M. Stevens for $3,888.00, and Henry Kaufman for $521.10, and that he cannot, as against the appellant Myrtle V. Edgington, take credit for having paid any of the other claims. Unquestionably the administrator has acted in the utmost good faith, and the conclusion to which we have come may result in a hardship to him, but we must declare the law as we find it. The result of our holding, in so far as the appellant Myrtle V. Edgington is concerned, is that the only valid claims against the estate amount to a total of $6,742.10. As to that appellant, the administrator has proceeds of the estate in his hands in the sum of $7,865. These proceeds may be considered as having discharged the duly allowed and proven claims, thus leaving in the hands of the administrator, so far as this minor appellant is concerned, cash in the sum of $1,122.90. The expenses of administration amount to $1,679.00, for which she is liable for one-eighteenth, or $93.25. This would leave a balance in the hands of the administrator, so far as the appellant Myrtle V. Edgington is concerned, of $1,029.65, and she would be entitled to be paid one-eighteenth part of that sum, or $57.20. That portion of the decree of the lower court establishing a lien against the property distributed is, of course, binding against those who have not appealed, and is binding against the appellant Belva Gillette because we have determined she is not in position to raise the question, but it is not binding as against the property distributed to the appellant Myrtle V. Edgington, for two reasons: first, because, under our ruling here, that portion of the estate represented by her is not indebted to Thompson; and sec-

ond, because, under the former rulings of this court, such a decree is not warranted by the probate code. It has been expressly so held in *Huston v. Becker,* 15 Wash. 586, 47 Pac. 10, and *Horton v. Barto,* 17 Wash. 675, 50 Pac. 587. The amount of such lien was $17,382.45. Since no part of that amount is chargeable to this minor appellant, her portion, to wit, one-eighteenth, should be deducted. So doing would leave the lien for $16,416.75. Section 1737, Rem. Code, provides that this court "may affirm, reverse or modify any such judgment or order appealed from, as to any or all of the parties, and may direct the proper judgment or order to be entered. . . ." We think the following will accomplish justice in this case: the combined order and decree approving the final report and distributing the property is hereby so modified as that it will direct the administrator to pay to Myrtle V. Edgington, or her guardian, the sum of $57.20, and so that the lien established in favor of said Richard N. Thompson shall be for the sum of $16,416.75, instead of $17,382.45, which lien, however, will not in any manner be upon or affect the property or interest therein distributed to Myrtle V. Edgington, but her interest in such property shall be free of any such lien. In all other respects the decree is approved and affirmed.

HOLCOMB, C. J., FULLERTON, TOLMAN, and MOUNT, JJ., concur.