[No. 21765.   Department One.   October 11, 1929.]

*In the Matter of the Estate of* WILLIAM HENRY FOTHER-INGHAM, *Deceased.*

MYRTLE LOIS HANSON *(formerly Myrtle Lois Fother-ingham), Appellant, v. B. J.* FOTHERINGHAM, *Respondent.*[1]

[1]Reported in 281 Pac. 337.

*Charles H. Graves,* for appellant.

*Herr, Bayley, Croson & Innis* (*Burton J. Wheelon,* of counsel), for respondent.

FULLERTON, J.—William Henry Fotheringham died testate in King county, Washington, on November 27, 1927, leaving an estate therein, consisting of real and personal property. He left as his heirs at law his wife and a minor son. In his will, he bequeathed to his son $1,000, and devised and bequeathed all the rest and remainder of his property to his wife. No executors were named in the will, and when it was presented for probate, the wife waived her preferential right to act as administratrix; and B. J. Fotheringham was appointed administrator with the will annexed. At the close of the administration proceedings, the administrator filed his final account as such, to which the wife took exceptions. At the hearing, the trial court sustained the objections in part and rejected them in part, and entered a decree in accordance with its conclusions. From so much of the decree as rejected her exceptions, the wife appealed. She is before this court under the name of Myrtle Lois Hanson, having remarried at some stage in the course of the administration proceedings.

The errors assigned are the following (we quote from appellant's brief):

"1. The court erred in approving the administrator's final account and decreeing distribution, in the following particulars:

"(a) In allowing the administrator credit of $2,068.11 for payments of alleged unsecured debts of the testator, due and owing at the time of his death, claims for which had not been served upon the administrator nor filed with the clerk of the court, as provided by the laws of the state of Washington, within the six months allowed by law, or at all.

"(b) In allowing him credit for $550 attorneys' fees.

"(c) Allowing credit for $40 miscellaneous items.

"2. Refusing to charge him with the auditor's fee of $125.

"3. Allowing $100 to guardian *ad litem* and his attorney.

"4. In overruling appellant's motion for new trial."

At the time of his death, Fotheringham was engaged in the retail lumber and fuel business. He died suddenly, and the business required immediate attention. Shortly following his appointment, the administrator applied to the court for authority, and was granted authority, to carry on the business as a going concern until the further order of the court. Later on, the administrator received an offer for the business which it was deemed advantageous to accept. He thereupon petitioned the court for an order authorizing him to sell the property, reciting in his petition the offer made for the property, and reciting facts showing a necessity for the sale. The court, at the hearing on the petition, granted the order, authorizing a sale to the party making the offer. The offer was conditioned that the property be free from incumbrances. There was a mortgage on the property executed by the decedent for $2,500, which mortgage the court directed the administrator to pay. The decedent also owed a number of current accounts, which the contemplating purchaser insisted should be paid as a condition precedent to its taking the property, and these the administrator paid. While at that time the statutory notice to creditors had been published, or was in the course of publication, the time for presenting claims against the estate had not expired, and the administrator paid them without requiring the presentation of formal claims by the claimants. These aggregated the sum of $2,068.11, and constitute the item to which the appellant objects in subdivision (a) of her first objection to the administrator's account.

■ The appellant conceded in the court below, and concedes in this court, that the accounts were obligations justly due and owing by the decedent, and bases her objection to the allowance of their aggregate sums as a credit to the administrator solely on the ground that they were paid informally; that is, without the requirement that formal claims be presented for them. Her objection has support in the statute (Rem. Comp. Stat., § 1477) and in our decisions construing the statute (*In re Thompson's Estate,* 110 Wash. 635, 188 Pac. 784; *Baumgartner v. Moffatt,* 113 Wash. 493, 194 Pac. 392; *Davis v. Shepard,* 135 Wash. 124, 237 Pac. 21); and it is possible that, did nothing more appear than the recited facts, the contention would have to be sustained, however inequitable it may appear.

■ But the record shows that the appellant, prior to the execution of the sale, was informed of the outstanding obligations of the decedent, of the terms and conditions on which a sale of the property could be made, and of the amount of the proceeds derived from the sale that would be left to the estate, and, after being so informed, acquiesced in the sale without objection in any form. While the record is silent as to the matters, it is possible that the appellant did not know, at the time the sale was under consideration, that formal claims for the indebtedness of the decedent had not been presented to the administrator, and possible that she did not know that the administrator intended to pay them without requiring such formal presentation; but we think, nevertheless, she is estopped from invoking the statutory rule requiring claims against an estate to be formally presented. The property of the estate was the community property of the appellant and her husband, and the debts the administrator

paid were community debts. The appellant is now the sole beneficiary of the estate, and any deduction that is made in the administrator's account will inure to her sole benefit. The appellant was competent to contract, and it is the rule, even under the present statute, that the parties interested in an estate, competent to contract, may between themselves agree upon a settlement and distribution of an estate without the formality of an administration. We think, under the conditions here shown, it would be too much to say that the appellant can benefit at the expense of the administrator for the sum which she claims.

The allowance to the attorneys we also think is justified. It is true that the administrator acted irregularly in his proceedings. Indeed, it would seem that irregularity was the rule rather than the exception, but we are unable to discover that the irregularities caused a loss to the estate, or that the attorneys were responsible for the irregularities of the administrator. The amount of the fee to be allowed the attorneys was largely within the discretion of the court, and we find no abuse in its exercise.

The miscellaneous items consisted of two bank checks, one for $10 and the other for $30, drawn upon the funds of the estate and payable to "cash." It was the testimony of the administrator that he personally cashed the checks and paid the money to the appellant. He recites circumstances, which the appellant admits in part, that lend probability to his testimony. The appellant, however, denies receiving the money. If the appellant received the money, the sums were properly charged in the administrator's account. Whether she received it or not, was a question primarily for the determination of the trial court. It had opportunities, which we have not, to ascertain the truth, and since it allowed the credit, we will not disturb the allowance.

Concerning the assignment numbered 2, we feel that we have cause to complain of the manner in which it is treated in the briefs of counsel. While general references to the record are made, the specific pages where the matters referred to can be found are not cited. We find, however, in an order made by the court referring principally to other matters than the one now in question, a recital to the effect that the appellant desired to have an audit made of the records in the possession of the administrator by "L. Hicks Taylor, accountant," and a direction, following the recital, "that access to said records be given to L. Hicks Taylor, accountant, for the purpose of making an audit on behalf and at the expense of said" appellant. The record further discloses that such an audit was made by Mr. Taylor, and that the appellant obligated herself to pay him for his services. The amount for which she obligated herself does not appear, but be the sum $125 or a less sum, we see no cause for charging it to the administrator. The audit was not a matter of concern to the administrator. It was wholly the act of the appellant and in no way pertained to the business of the estate. The appellant was dissatisfied with the manner in which the estate had been administered, was distrustful of the administrator's account, and had the audit made for her own satisfaction.

The final assignments require no special consideration. The appointment of the guardian *ad litem* was but the usual procedure in such cases, and the amount allowed as fees for his services, while liberal, was not so excessive as to permit us to interfere. The motion for a new trial was based on the record, and is sufficiently met by our discussion of the particular questions involved.

The decree is affirmed.

TOLMAN, PARKER, and HOLCOMB, JJ., concur.

BEALS, J. (dissenting)—I concur with the majority in holding that, under the peculiar circumstances of this case, the administrator should not be charged with an amount of money equal to the sum which he paid out of the funds of the estate on account of general claims against the same by way of bills due therefrom incurred by the decedent in connection with the business which had been carried on by him and for which no verified claims were filed by the respective creditors as is required by law. On some of the other questions raised by the appellant, I am constrained to dissent from the conclusions reached by the majority.

It is apparent, as stated in the opinion, that the administrator was negligent in keeping the accounts of the estate. For this reason, I am of the opinion that the compensation earned by the auditor who went over the accounts should have been charged, primarily at least, to the administrator. Had he kept his accounts in proper shape no necessity would have existed for any examination by an outside accountant. Under the circumstances disclosed by the record in this case, the cost of preparing the statement of the accounts of the estate should have been borne by the administrator.

I am also of the opinion that, under the circumstances disclosed by this record, the allowance to the administrator for compensation to his attorneys was too large.

Finally, I am convinced that the appointment of a guardian *ad litem* for the minor son of the deceased, and the allowance of compensation to such guardian *ad litem* and to his attorney, was unwarranted. Appellant was the general guardian of her minor son and, as such guardian, as well as in her own right as devisee under the will of the decedent, was vigorously contesting the final account of the administrator. Under these circumstances, no occasion existed for the appointment

of a guardian *ad litem*. In cases where the general guardian is also administrator of the estate, or for any reason occupies a position which might be antagonistic to his ward, it is proper for the court to appoint a guardian *ad litem* to represent an heir who is a minor or incompetent for any reason to act for himself, but no such circumstances existed here, and in my opinion, the appointment of a guardian *ad litem* was without justification.

For the reasons assigned, I dissent from the conclusion reached by the majority.

*J. W. Graham*, for respondent.

[1]Reported in 281 Pac. 340.