[1] Reported in 119 P.2d 312.
This appeal involves the final report in the estate of John L. Krueger, deceased, who died January 9, 1926, leaving a nonintervention will in which John W. Whitham was appointed executor. The will was admitted to probate January 11, 1926. Thereafter, the estate was appraised in the sum of $10,186.44.
The total amount realized by the executor, as shown by his report dated December 17, 1931, was $8,652.13, which included the following items:

 Sale of house and lot ............. $2,650.00
 Sale of small sawmill ............. 1,200.00
 Cash in the bank .................. 3,521.12
 Amount collected from other sources 1,281.01

During the year 1928, the executor deposited $5,000 of the estate funds in the Home Savings Loan Association, which was later liquidated by the state banking department. Claims filed against the estate amounted to $11,253.44, of which amount $824.70 were preferred claims. Of the preferred claims, $312.50 were not verified. The executor paid all of the preferred claims and some of the general claims in full, notwithstanding the fact that the estate was insolvent. Among the assets of the estate was a sawmill in operation at the time of Mr. Krueger's death and which the executor operated for two weeks after his appointment.
The executor filed four reports. The first report showed receipts in the amount of $8,652.13 and disbursements in the sum of $3,193.20, including executor *Page 332 
and attorney fees in the sum of $750. The second report disclosed dividends from the liquidator of the Home Savings Loan Association of $558.80 and disbursements in the sum of $524.38, including $325 paid a firm of attorneys employed to defend the executor in an action brought against him. The third report showed dividends and interest from the liquidator in the sum of $2,066.17 and the expenditure of fifty dollars as a contribution to a committee which was engaged in litigation against the liquidator of the Home Savings Loan Association. The fourth report is the one under consideration, and shows that the executor paid expenses since December 17, 1931, of $524.38, leaving a balance on hand of $2,803.93.
There was additional income due the estate, prior to the filing of the final report, from the sale of a pass book in the sum of $184.41 and the sale of the personal effects of the deceased in the sum of $110.
The estate has had considerable difficulty concerning the various claims against it and the actions of the executor. This appeal makes the sixth time it has appeared in this court, necessitating the expenditure of much of the money belonging to the estate. In re Krueger's Estate, 145 Wn. 379,260 P. 248, arose out of a citation to compel the executor to act upon a claim presented to him. Neff v. Whitham, 147 Wn. 101,265 P. 462, involved an action to recover a commission of two hundred fifty dollars from the estate. Gostina v. Whitham,148 Wn. 72, 268 P. 132, was an action to recover upon evidence of indebtedness. In In re Krueger's Estate, 173 Wn. 114,21 P.2d 1030, the executor brought action against the supervisor of banking seeking to establish a trust fund of the moneys he had deposited in the Home Savings Loan Association. In In reKrueger's Estate, 180 Wn. 165, 39 P.2d 381, Gostina, the plaintiff in Gostina v. *Page 333 Whitham, supra, sought to hold the executor personally responsible for the loss of funds of the estate he had deposited in the Home Savings Loan Association. The estate lost all of the cases except the last one mentioned.
During the progress of the administration of the estate, the state of Washington filed a claim for inheritance taxes. The claim for the tax was based upon an amount due Carrie Gostina, in the sum of ten thousand dollars.
After the executor had filed his final report, Carrie Gostina and William Neff, two creditors of the estate, filed separate objections to the report. The objections were alike, and recited, first, that the executor had failed to itemize his receipts of the first report, particularly the item referred to as "amount collected from all other sources, $1,281.01"; second, that the executor should be required to furnish an itemized statement concerning the operations of the sawmill. In the third, fourth, and fifth objections, thay challenged the right of the executor to pay certain claims. Another objection challenged the payment of attorney's fees. The two creditors also filed objections to the claim of the state for inheritance tax.
At the hearing upon the final account, the court entered an order confirming the report of the executor, allowing certain fees, and disallowing the claim of the state to an inheritance tax. The state appealed from the order disallowing the tax. The creditors Gostina and Neff cross-appealed from the order approving the report, and the executor cross-appealed from the order fixing the executor's fee in an amount less than requested.
[1] We will consider the appeal of the state first, in which error is predicated on the part of the trial *Page 334 
court in decreeing that no inheritance tax was due the state of Washington.
The facts relating to the Gostina claim, upon which the state claimed a tax, are stated in Gostina v. Whitham, supra, as follows:
"For many years prior to his death, John Krueger made his home with the respondents. The condition of his health was such as to require a great deal of care and nursing. All of this was supplied by respondents, and no payment was ever made therefor. In June, 1924, he delivered to respondents an order in writing as follows:
 "`The National Bank of Commerce of Seattle Pay to the order of Carrie Gostina $ ___________ After death 10,000.00 Dollars. John Krueger.'
"Krueger spent most of his time at respondents' home until a few months prior to his death, when, for some reason, he spent part of his time with another neighbor. In 1925, he made a will bequeathing his estate to brothers and sisters. The respondents presented their claim, based on the writing just set out, which was refused, and this action instituted to enforce the payment, with a favorable result."
The state claims that the order which formed the basis of the Gostina claim constitutes a transfer which comes within the literal language of Rem. Rev. Stat. (Sup.), § 11201 [P.C. § 7051], and that the tax is payable regardless of the fact that the written agreement was founded upon a consideration. The pertinent portions of that statute read:
"All property within the jurisdiction of this state, and any interest therein, . . . whether tangible or intangible, which shall pass by will or by the statutes of inheritance . . . or by deed, grant or sale or gift made or intended to take effect in possession or in enjoyment after death of the grantor or donor, .. . shall, for the use of the state, be subject to a tax as provided for in section 2." *Page 335 
To support its contention, the state cites In re Gaudette'sEstate, 165 Wn. 412, 5 P.2d 503. The facts in that case, an inheritance tax claim which we allowed, are more fully stated inMcCullough v. McCullough, 153 Wn. 625, 280 P. 70.
With this contention, however, we cannot agree. In the first place, a comparison of the cited cases with the instant case reveals a marked difference not only in facts, but also in legal theory. In the former, action was brought on a contract to make provision by will. As no claim against the estate was filed, plaintiff was never an estate creditor. Recovery was obtained, however, by a suit in the nature of specific performance. Therefore, since the effect of the action was to make a transfer pursuant to will and thus testamentary in character, the property transferred, although for a consideration, was held taxable. In the McCullough case, we said:
"If a claim had been filed in probate and rejected, and an action brought thereon, it would have been necessary to measure the damages in money. To state it otherwise, it would have been necessary to measure the love, affection and companionship of the father when he gave up the custody and control and all association with his daughter and the love and affection and companionship which the respondent rendered to Mrs. Gaudette during her lifetime. For services of this character, the law furnishes no measure of damages."
The instant case, on the other hand, is one of a contract creditor seeking recovery against the estate for services rendered. Hence, the position of Gostina is no different from any other creditor of the estate. Consequently, the principle announced in In re Gaudette's Estate, supra, is not authority here. It is obvious that there is a marked difference between thepayment of a contractual obligation, as an established *Page 336 
claim against the estate, and a transfer of property pursuant to a contract to dispose of property by will.
Although the indebtedness was not payable until death, still the payment-time element could not change its status from a debt to something either testamentary in character or a device designed to evade the tax statute. Similarly, the status of the indebtedness could not be changed because it was evidenced by a bill of exchange. This instrument had the same effect as the giving of a promissory note. In Gostina v. Whitham, we stated:
"An instrument founded upon a consideration, whereby one agrees to pay another a definite sum, does not partake of a testamentary character simply because the time of payment be postponed until death. In re Griswold's Estate, 113 Neb. 256, 202 N.W. 609; Inre Conger's Estate, 113 Misc. Rep. 129, 184 N.Y. Supp. 74;Lawrence v. Scurry, 187 Iowa 1055, 175 N.W. 22; Foxworthy v.Adams, 136 Ky. 403, 124 S.W. 381; Ann. Cas. 1912A 327, 27 L.R.A. (N.S.) 303."
Courts in other jurisdictions have passed upon statutes similar to ours. In In re Koeffler, 218 Wis. 560, 260 N.W. 638, 261 N.W. 711, 99 A.L.R. 944, a case concerning a claim for inheritance taxes on property received as consideration under a marriage contract was under consideration. The Wisconsin act (72.01 (3), Stats.) provided:
"A tax shall be and is hereby imposed upon any transfer of property, real, personal or mixed. . . .
"(3) Transfers in contemplation of death. When the transfer is of property, made by a resident . . . by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death."
In deciding the case, the court observed:
"It is manifest that if sec. 72.01 (3) be literally interpreted, it would apply to a debt upon full money *Page 337 
consideration due at the death of the promisor. Certainly, where a person has received full money consideration and promises to return it out of his estate at his death, nothing passes by will or by the intestate laws of the state, nor does the recipient take anything under the inheritance laws. See Estate ofHamilton, 217 Wis. 491, 259 N.W. 433. The claim of the promisee is that of a creditor, and the estate merely returns to him what the decedent received from him."
In speaking of a case which indicated an opposite view, the court said:
"If the doctrine of that case be applied literally, it would require creditors to pay a tax upon the amount received by them from the estate of the deceased. We are unable to subscribe to the doctrine of that case or other similar cases."
The court then quoted the following from In re Baker'sEstate, 38 Misc. 151, 77 N.Y. Supp. 170, as follows:
"`It [the amount due] is a debt, within the meaning of the usual clause in a will directing the payment of debts, and the executor may pay it as such [citing case]. It is not made in contemplation of death, but of marriage. That in this particularcase one of the parties to the contract becomes entitled to itsconsideration upon the death of the other, and so "enters intothe possession or enjoyment thereof" at or after such death, isbut an incident of, and not of the essence of, the contract. Thetime of payment of the consideration is fixed at death, but itwould be equally valid if fixed at some other period or time, andin either case the consideration is none the less a debt payablefrom the estate of the deceased. The contention that this is a transfer by sale, intended to take effect in possession or enjoyment at or after death, would apply equally to a note madepayable after the death of the maker; yet such note is entirelyvalid and enforceable against the personal representatives of the deceased for its face and interest.'" (Italics ours.) *Page 338 
That the legislature intended a creditor, who has rendered a service, to pay a tax for acquiring the promised remuneration because of the debtor's demise, cannot be assumed. The statute was enacted for the purpose of taxing "the right to receive" property transmitted in various ways. All relate either to testamentary dispositions, or to dispositions of assets designed to evade the tax.
In Bente v. Bugbee, 103 N.J.L. 608, 137 A. 552,58 A.L.R. 1137, it appeared that the plaintiff and her husband, at the request of a Mr. Steinberg, furnished him a home for the rest of his life and agreed to take their pay in a legacy of fifteen thousand dollars. They furnished him a home in compliance with their contract. At his death it was found that he had not provided the legacy in his will. They were successful in securing a judgment for that amount against the executor of the Steinberg estate.
In passing upon the question as to whether the debt was subject to a succession tax, the court said:
"It must be perfectly obvious that general debts are not taxable; in fact, they are deducted under the express provisions of the act. So, if Steinberg had promised to pay at a stated date, or even to pay generally, or had given a note at one year, or on demand, or even payable at his death or at a stated time thereafter (Rand. Com. Pap., § 113; 8 C.J. 136), it cannot be conceived that a tax would accrue under the statute. . . .
"There is no distinction between such cases as those just mentioned, and the case sub judice, except that in the latter the deceased agreed to pay the contract price by a provision in his will, and failed to do so by will or in any other way. Admittedly, such a case is not within the language of the statute. As we understand the opinion of the Supreme Court, it was held within the legislative intendment, apparently on the equitable theory of regarding that as done which ought to have been done. That maxim is applicable in favor of a party to the original transaction who would be benefited *Page 339 
by its application (Goodell v. Monroe, 87 N.J. Eq. 328): but it is a novel application of it to invoke its operation in favor of a state tax. Moreover, there is no equity involved in this case. A tax is a legal imposition exclusively of statutory origin (37 Cvc. 724, 725), and, naturally liability to taxation must be read in the statute, or it does not exist."
An excellent statement of the legislative intendment as expressed in inheritance tax statutes is found in In re Hubbs,41 Ariz. 466, 19 P.2d 672:
"While, it is true, the language of paragraph 4995 imposing the tax is broad enough to include transfers of property made even with adequate consideration, yet both the weight of authorityand reason point to the conclusion that such a result was notintended. The purpose of the statute was not to impose aninheritance tax upon transfers of property made in the ordinarycourse of business and for an adequate, valuable consideration, but upon those made by deed, grant, bargain, sale or gift, when these instruments are intended to and do accomplish what a will would have brought about, that is, pass property to another `to take effect in possession or enjoyment after the death of the grantor.' [citing cases]" (Italics ours.)
Again, in In re Orvis, 223 N.Y. 1, 119 N.E. 88, 3 A.L.R. 1636, the court stated:
"Transfers resting upon a valuable and adequate consideration, although within the classification of the statute are not within the intendment of it and are not taxable. (Matter of Baker.83 App. Div. 530; affirmed on opinion below, 178 N.Y. 575.) . . . The measure determining the liability or freedom from liability to the tax is the nature, the essence, the effect of the transfer. If, in truth, it, in effect, bestows, under the statutory conditions, a bounty or benefaction, and is not a transfer for money's worth, it is taxable."
Accord: In re Thompson's Estate, 196 Iowa 721, 195 N.W. 250;In re Risvold's Estate, 295 N.W. (S.D.) 642; Reamer's Executorv. Coleman, 226 Ky. 301, 10 S.W.2d 1095. *Page 340 
It is our conclusion that the Gostina claim was based upon a debt owed by Krueger, and the fact that its payment was postponed until after the death of the debtor did not make it taxable. The action of the trial court in rejecting the claim of the state was proper.
The errors urged by cross-appellants Gostina and Neff are in holding that the order approving the executor's first report wasres judicata as to all creditors and persons interested in the estate; in rejecting their offer of proof concerning the payment of improper claims; in finding that the executor had faithfully and honestly performed his duties; in approving the allowance of the compensation paid to the executor; and in the allowance of attorney's fees.
During the course of the hearing upon the final report, cross-appellants objected to the allowance of certain accounts or claims paid by the executor. They contended and offered to prove that some claims were paid without having been filed, some had been paid which had not been verified, and the executor had paid an exorbitant commission for the sale of property belonging to the estate. The offer of proof was rejected by the court upon the ground that the claims had been approved at the hearing upon the first report and that that approval was res judicata.
 [2] Before discussing the right of cross-appellants to question the acts of the executor at the final hearing, we deem it proper to advert to the law relative to the allowance of unfiled or unverified claims. The statute which provides for the verification and filing of claims during the probate of an estate is mandatory and must be strictly followed. Unverified or unfiled claims are not a charge against the estate and cannot be allowed by an executor or administrator. If an executor or administrator pays them, he will be held personally accountable to the estate. *Page 341 
Rem. Rev. Stat., § 1477 [P.C. § 9828], provides:
"Every executor . . . shall, immediately after his appointment, cause to be published . . . a notice to the creditors of the deceased, requiring all persons having claims against the deceased to serve the same on the executor . . . or his attorney of record, and file [the same] . . . within six months after the date of the first publication of such notice. . . . If a claim be not filed within the time aforesaid, it shall be barred."
We have applied the rule just mentioned in the following cases:In re Thompson's Estate, 110 Wn. 635, 188 P. 784;Baumgartner v. Moffatt, 113 Wn. 493, 194 P. 392; Davis v.Shepard, 135 Wn. 124, 237 P. 21, 41 A.L.R. 163; In reKrueger's Estate, 145 Wn. 379, 260 P. 248; In reFotheringham's Estate, 154 Wn. 130, 281 P. 337; State exrel. McClintic v. Superior Court, 158 Wn. 255, 290 P. 870;Parchen v. Hauschild, 159 Wn. 49, 292 P. 116; and Waltersv. Christensen, 191 Wn. 602, 71 P.2d 664.
This court, in construing the effect of Rem. Rev. Stat., § 1478 [P.C. § 9829], which reads:
"Every claim served and filed as above provided shall be supported by the affidavit of the claimant that the amount is justly due, that no payments have been made thereon, and that there are no offsets to the same to the knowledge of the claimant."
has held that claims filed but not supported by the affidavit of the claimant must not be allowed or paid by the executor or the administrator.
In First Security Loan Co. v. Englehart, 107 Wn. 86,181 P. 13, we stated:
"We have seen that the statute at all times since 1897 requiredevery executor to give notice to creditors to present their claims. By § 108 (p. 673) of the probate code of 1917, `every claim served and filed,' and by the prior law, Rem. Code, § 1473, `every claim presented,' is required to be supported by the affidavit *Page 342 
of the claimant that the amount is justly due, no payments have been made thereon and there are no offsets to the same. To declare that there may be a proper presentation of a claim against an estate without its being supported by the affidavit of the claimant would at once nullify the law."
The cases already cited, and those mentioned below, indicate our adherence to the rule first laid down to the effect that the provisions of the probate law relative to the filing of claims must be complied with in the strictest sense. Dillabough v.Brady, 115 Wn. 76, 196 P. 627; Andrews v. Kelleher,124 Wn. 517, 214 P. 1056; Hammond v. Waddingham, 127 Wn. 234,220 P. 796; Allerton v. Allerton, 133 Wn. 260,233 P. 632.
The hearing upon the first report in 1931 was in response to a citation issued upon a petition presented by the Gostinas. No other creditor had notice of or was present at the hearing. At that time the court entered an order approving the report which set out numerous expenditures made by the executor. In discussing this case, it must be remembered that this estate is insolvent.
We are confronted with the question of whether or not an order approving a legal representative's periodical report possesses the attribute of a final judgment.
[3] It is a rule in this state that a judgment in an action is not final or res judicata as to persons not parties actually or by privity. Northern Pac. R. Co. v. Snohomish County,101 Wn. 686, 172 P. 878; Sanders v. Sheets, 142 Wn. 155,252 P. 531; Kincaid v. Hensel, 185 Wn. 503, 55 P.2d 1050;Large v. Shively, 186 Wn. 490, 58 P.2d 808; State ex rel.Lidral v. Superior Court, 198 Wn. 610, 89 P.2d 501.
[4] Does a different rule apply in probate proceedings? As evidenced by our statutes, the informality in which periodical reports may be rendered and the purpose *Page 343 
for which they are rendered preclude any inference of their finality and conclusiveness, except under certain conditions.
Rem. Rev. Stat., § 1530 [P.C. § 9792], provides:
"It shall not be necessary for the executor or administrator to give any notice of the hearing of any report prior to the final report, except as in section 1434 provided, but the court may require notice of the hearing of any such report. If the court does not require such notice to be given, then at any time after ten days following the filing of any report, other than the final report, the court may hear and settle such report."
Under our system of estate administration, then, periodical reports may be, and generally are, heard ex parte and without notice. They were designed, first, to inform the court of the financial condition of the estate at a given date as well as the changes occurring over a period of time, and of the progress accomplished toward the final settlement; second, to aid the legal representative in his management.
Because the usual practice is to present periodical reports exparte and without notice, the only opportunity to interpose objections is at the final hearing. That this was the legislative intent, is clearly manifested by Rem. Rev. Stat., §§ 1532 and 1533 [P.C. §§ 9794, 9795]. Those sections enjoin the executor or administrator to publish notice of the time fixed for the final hearing. On that occasion, all matters affecting the estate must be minutely scrutinized. Hence, if interested parties are precluded from excepting at such time to previous interim orders approving periodical reports, not only will those parties be denied their day in court, but the assets of the estate will be jeopardized. Consequently, a sharp distinction must be drawn between interim orders entered without notice approving periodical reports, and final orders *Page 344 
entered with notice approving final reports. An excerpt from an annotation in 86 Am. Dec. 143-146, may serve to elucidate this distinction.
"EFFECT AS RES JUDICATA OF ANNUAL SETTLEMENTS OF EXECUTORS OR ADMINISTRATORS. — The probate system generally prevailing in this country makes provision for partial settlements of administration accounts prior to the final settlement. These partial settlements are made either annually or more or less frequently, as the discretion of the court may dictate, and are called partial or annual settlements. But while all settlements of administrators' and executors' accounts are in a certain sense judicial determinations, yet there is a broad distinction between annual and final settlements. The one is wholly ex parte and without notice; the other can be made only upon due publication of notice to creditors and all persons interested. The one is made annually, or oftener, at the pleasure of the court; the other only when the estate is fully administered. The one is for the information of the court and the convenience of the administrator in the management of the estate; the other for the protection of the administrator, and is a final adjudication of the respective rights and obligations of the administrator, creditors, and heirs. The one is only prima facie correct, and is subject to correction of any errors or mistakes thereafter discovered in it, without appeal or any direct proceeding to review it or set it aside. The other is conclusive and final, unless set aside by appeal or direct proceeding therefor, or impeached for fraud. The one is, so to speak, a judgment de bene esse, the other a final judgment: Musick v. Beebe, 17 Kan. 47. Being made ex parte
without notice to the heirs, legatees, creditors, and other interested parties, partial or annual settlements do not have the force and effect of judgments, and are not conclusive upon any party interested, not even the executor or administrator himself.. . . They are, however, prima facie correct only, and are opento collateral attack: West v. West, 75 Mo. 204; and all errors,omissions, or mistakes therein of the court, or of the executoror administrators, though not excepted to, [Citing *Page 345 
cases] may be corrected at the instance of the court or anyinterested party upon a proper and sufficient showing, either atthe coming in of any subsequent annual account, . . . or upon thefinal settlement of the administration accounts: . . .
"We have seen that the reason of the rule that partialsettlements are not regarded as res judicata is that the accountis settled ex parte without notice to parties interested.Therefore, if the statutes provide for notice upon annual orpartial settlements in the same way as upon final settlements,the reason of the rule would cease, and all parties be equallyconcluded as to the matters embraced within the annual settlementas by a final settlement, provided, of course, the notice is properly given." (Italics ours.)
Although there is authority to the contrary (see 3 Bancroft's Probate Practice (1928) 1587, § 932, and cases cited; In reMcLure's Estate, 90 Mont. 502, 3 P.2d 1056), yet a careful reading convinces us that the reason for the disagreement lies in the various legislative enactments. More specifically, the contrary authorities may be distinguished on the ground of whether or not the probate code commands legal notice to be given for hearings on periodical reports. If so, the order of approval is res judicata.
Although the precise question under consideration has not been before this court, yet in In re Peterson's Estate, 6 Wn.2d 294, 107 P.2d 580, we expressed a hope that
". . . it may be found that the law does not prevent their [interim orders] being inquired into by the judge who was called upon to pass upon the final reports, . . ."
In 24 C.J. 1032, § 2489, it is written;
"Annual or partial settlements of personal representatives, when made ex parte, as they usually are, have not, like final settlements, the force and effect of judgments and so are not conclusive, but are only prima facie evidence of the correctness of the account stated, *Page 346 
the burden of overcoming their presumption being, however, on the party impeaching such a settlement. Indeed such settlements have been denied any recognition at all as evidence, at least when not made in conformity with the statutes. Such settlements have also been held open to collateral attack. On the other hand statutes sometimes make such settlements conclusive if they are not objected to within a certain time.
"As to any matters contested and adjudicated on such settlements, the usual rule as to adjudications by the courts applies, and the parties contesting are concluded, and the same rule applies when notice of the settlement is given and no objections are presented."
It is stated in 21 Am. Jur. 683, § 538:
"The operation and effect of an account depend upon whether it is final or annual. Orders and decrees as to the former have the effect of a final judgment, while orders and decrees as to the latter are preliminary and subject to change or modification as the exigencies of the case and the demands of justice require."
In Picot v. Biddle's Administrator, 35 Mo. 29, 86 Am. Dec. 134, the residuary legatee appeared at the final hearing and interposed objections to several accounts set forth in previous reports. The matter was referred to a referee. At the hearing, the legatee offered in evidence previous annual reports to show that they contained mistakes, but were rejected. From the court's affirmance of the referee's report, the legatee appealed. The question involved was stated to be:
". . . whether an annual settlement (preceding the final settlement of an executor or administrator) has the force and effect of a judgment, precluding any inquiry into its correctness on a final settlement."
In passing on this question, the court remarked:
"Under our statute there is an obvious distinction between an annual and a final settlement. Of an annual settlement no notice is required to be given to the parties interested, and hence it becomes an ex parte proceeding; but a final settlement cannot be made without *Page 347 
the publication for four weeks of a notice to the parties interested, that the administrator intends to make such a settlement at the next term of the court. Why notify a party to appear, if, when he does appear, his hands are to be tied and his mouth closed, and he is to be told that he has no right to question the accounts of the administrator as exhibited in the previous settlements? He may be able to show errors in addition, mistakes in calculations, and omissions to charge the administrator with money or property which may have come into his hands; yet he is denied the right of so doing, and told he must submit to all this unless he files a bill in chancery, and shows that such mistakes and omissions resulted from the fraudulent conduct of the administrator. . . .
"At the last or final settlement all parties interested are notified to appear, and generally do appear, if they desire to know the manner in which the estate has been administered and the occasion is one well adapted to the correction of mistakes, whether in favor of or against the administrator."
Again, in Mix's Appeal from Probate, 35 Conn. 121, 95 Am. Dec. 222, an erroneous "preliminary" report was presented to the probate court. At the hearing on the final report, the administrator was refused permission to make the correction. On appeal to the superior court, appellees objected to the evidence offered by the administrator to prove the mistake, on the ground that the probate court's decree, allowing the preliminary account, was conclusive. On being overruled, appellees appealed. In determining the correctness of the ruling, the court said:
"We are not disposed to question the proposition that a decree of a court of probate, unless appealed from, is final and conclusive upon the parties, as to all matters within its jurisdiction which are necessarily involved in the issue. The question here is, whether this case falls within that principle. A distinction is to be observed between orders and decrees made during the settlement of an estate, which are merelypreparatory *Page 348 
to a final settlement and distribution, and a final decree adjusting and closing an administration account. The latter only possesses the elements of a final judgment; the former are preliminary, and subject to change or modification, as the exigencies of the case and the demands of justice may require. We believe the practice has been, and now is, for the court of probate, in adjusting the final account, to rectify all mistakes in the prior proceedings."
Another excellent statement of the rule is found in Goodwin v.Goodwin, 48 Ind. 584. This case involved an attack upon the executor's final report by a residuary legatee. One of the exceptions referred to a preliminary report. In reply to this exception, the executor contended that
". . . the partial report and settlement, in which the payment. . . was embraced, was allowed and approved by the court, and that this constituted a legal adjudication of the question, and became, in effect, a judgment of the court, and conclusive upon the appellant, not having been excepted to or appealed from by him."
The court, however, held as follows:
"In our opinion, this position cannot be sustained. It has never been held that such effect can be given to a partial settlement made by an executor or administrator in the course of administration. The statute provides what shall be the force and effect of a final settlement. 2 G. H. 518, sec. 116. These partial settlements are made without notice to heirs or legatees. They are ex parte in their character, and there is no statute or rule of law, that we are aware of, which gives them the force which is claimed for them. When there was no statute declaring the effect of final settlements, they were regarded as onlyprima facie correct."
Similarly, in Bliss v. Seaman, 165 Ill. 422, 46 N.E. 279, the residuary legatees filed a claim against the estate for a sum much larger than on hand. To establish their claim, the legatees introduced in evidence several approved *Page 349 
periodical reports of the executor and then introduced testimony to contradict and surcharge the accounts. The administrator debonis non objected on the ground that
". . . the adjudications of the probate court, and orders made by it approving the different reports and partial settlements, were final and conclusive judgments and not subject to collateral attack, and that therefore said reports and accounts cannot be impeached in this proceeding."
In deciding the correctness of this objection, the court stated:
"The statute (sec. 112, chap. 3), makes provision that all executors and administrators shall, every year, exhibit accounts of their administration, but that no final settlement shall be made and approved by the court unless the heirs of the decedent have been notified thereof. A partial or annual account of an executor or administrator is usually an ex parte proceeding, and is only a judgment de bene esse and only prima facie
correct, and, although not excepted to or appealed from, is open to subsequent correction or challenge."
Finally, in In re Baker's Estate, 34 Hawaii, 263, having been appointed administratrix, the deceased's widow applied and received a monthly family allowance. Subsequently she filed her final report. Included therein were items of the several monthly allowances as ordered by the court. Three heirs objected to the report on the ground that the allowances were excessive and ordered without notice. The administratrix, on the other hand contended that the objectors had no right to a review of the order of allowance, because it was final and could only be challenged by direct appeal. In passing on this question, the court said:
"But subsequent expenditures under ex parte orders or otherwise without notice were subject to objection *Page 350 
by any interested party when the final account of the administratrix came before the probate judge for approval and the aggrieved objectors might appeal to this court from an adverse ruling. Similarly a periodical or annual account of an executor as distinguished from a final account when ex parte and without notice is not binding upon those who did not participate in the proceedings."
In addition to the preceding authorities, the following also uphold the rule: Holland v. Doke, 135 Ark. 372, 205 S.W. 648;Goodknight v. Harper, 70 Colo. 41, 197 P. 237; Clement'sAppeal from Probate, 49 Conn. 519; Beattie v. Hewitt,114 Conn. 689, 159 A. 890; Collins v. Tilton, 58 Ind. 374;Musick v. Beebe, 17 Kan. 47; Bantz. Bantz, 52 Md. 686;Folger v. Heidel, 60 Mo. 284; Seymour v. Seymour, 67 Mo. 303;West v. West's Administrator, 75 Mo. 204; 4 Schouler on Wills, Executors and Administrators (6th ed.), 2775, § 3445.
For cases dealing with a statute allowing mistakes in reports to be corrected any time before the final settlement, and holding that interim orders approving erroneous reports, entered without notice, are subject to correction, see Clark v. Cress,20 Iowa, 50; Metcalf v. Baldwin, 143 Iowa, 310, 120 N.W. 104; In reEstate of Durey, 215 Iowa, 257, 245 N.W. 236; In re Metcalf'sEstate, 227 Iowa, 985, 289 N.W. 739.
It will be noted that the general rule as to the finality of orders or judgments mentioned at the beginning of this discussion applies to orders and judgments entered during the time an estate is probated.
We hold that interim orders approving periodical reports are not res judicata against interested parties without notice of the proceedings, but are merely prima facie correct, and those parties at the final hearing may interpose objections and demand an examination of previous approved reports. Therefore, because the Gostinas were present at the hearing *Page 351 
on the first report, the interim order of approval estops them from objecting thereto at the final hearing. But Neff, on the other hand, is not precluded from objecting at the final hearing to the items and improper claims in the first report, since he was not present at the first hearing, nor was notice thereof given. Furthermore, because an order is res judicata to one creditor of an estate, it does not follow that it is final as to another creditor of the estate who did not have his day in court. 34 C.J. 1013, § 1433.
The trial court should have admitted the evidence offered by cross-appellants and considered the entire record in this case and based its decision thereon.
[5] Cross-appellants contend that the estate has been mismanaged, as demonstrated by the record, which shows much unnecessary litigation and a diminution in the assets. It is true that a great portion of the estate has been used in needless litigation and the loss of money deposited in the Home Savings 
Loan Association. However, it appears that the executor acted with honest motives and for the interests of the estate as he determined those interests to be.
In view of the finding of the trial court and from our reading of the record, we must hold that there was no mismanagement of the estate for which the executor may be held accountable, unless it be that connected with the payment of unfiled or unverified claims or the payment of an unreasonable fee to a real estate broker.
Cross-appellants object to the approval of an item of fifty dollars paid to a committee engaged in litigation with the Home Savings Loan Association. We can see no basis for the allowance of this claim. The litigation was of no benefit to the estate. As a matter of fact, the estate has engaged in too many lawsuits.
[6] Cross-appellants object further to the allowance *Page 352 
of attorneys' fees and to the additional compensation awarded the executor. In so doing, they point out the length of time it has taken to settle this estate and the trouble incident thereto. Attorneys' fees allowed executors or administrators of an estate are largely within the discretion of the trial court and will not be disturbed in the absence of an abuse of that discretion. While the allowance of the fees to the executor and his attorneys are large, in view of the size of the estate and with results obtained, we are unable to hold the court abused its discretion.
Cross-appellant Whitham urges that the court erred in the fixing of the executor's and attorneys' fees and in taxing the payment of costs against the Gostinas in the former appeal against their original claim instead of against their prorated share. What we have already said concerning attorneys' fees and the fees allowed the executor makes it unnecessary to discuss this claim of error except to say that appellant was allowed liberal compensation, not only in payment of his own services, but for the payment of additional counsel who represented him at various times, including the hearing upon the final report. The fees already allowed are ample to pay the executor and counsel for all work necessary in winding up the affairs of this estate.
He complains that the court should have deducted certain costs obtained by the estate from the balance due Gostinas at the time the estate was finally closed instead of deducting them from the original claim. We can see no reason for this contention. The Gostinas were entitled to recover from the estate a certain amount of money. This was only lessened by the costs which they were adjudged to owe the estate as the result of some litigation in which they and the estate had engaged.
The judgment of the trial court is affirmed upon the *Page 353 
appeal of the state and the cross-appeals of the executor and Gostinas. It is reversed upon the appeal of cross-appellant Neff, with instructions to grant a rehearing of the executor's final report and to proceed as indicated in this opinion.
ROBINSON, C.J., BEALS, and JEFFERS, JJ., concur.