[No. 28960. Department Two. June 28, 1943.]

*In the Matter of the Estate of* JOSEPH MARSH, *Deceased.*

ROBERT E. HEDMAN, *as Administrator, Appellant,* v. FIRST NATIONAL BANK OF PORT ANGELES, *Respondent.*[1]

[1]Reported in 139 P. (2d) 284.

*Henry, Henry & Pierce* and *Riddell & Riddell,* for appellant.

*John M. Wilson* and *Joseph H. Johnston,* for rerespondent.

BEALS, J.—Prior to December 29, 1927, Joseph Marsh, a resident of Clallam county, died, leaving as his sole heir at law his minor daughter, Margaret, and Alston Fairservice was appointed administrator of his estate. The property subject to administration consisted of two parcels of real estate which the deceased

had operated as a summer resort, together with furniture and equipment thereon, an undivided one-fourth interest in four mining claims in Clallam county, and a bank credit of $101.63. The real estate was subject to a mortgage of $4,500, payable in monthly installments of $95.63.

The earliest document contained in the transcript before us is a petition of the administrator, dated December 29, 1927, in which the administrator stated that in his opinon the real estate was worth more than the mortgage, and that the mortgage should be paid by the estate and the property saved for the heir. The administrator asked for authority to pay the monthly installments on the mortgage as they fell due, and the same day an order was entered by the court authorizing the administrator to make the payments.

December 31, 1927, First National Bank of Port Angeles filed with the administrator its claim against the estate in the principal sum of $1,196, based upon a promissory note of the deceased (which it appears was also signed by Alston Fairservice, the administrator of the estate), dated July 21, 1927, due ninety days after date, bearing interest at eight per cent per annum. This claim was allowed by the administrator, January 4, 1928, and allowed by the court January 14th following, on which date the claim, bearing the allowance thereof, was filed with the clerk. Notice to creditors was regularly published in accordance with the statute.

October 28, 1933, the administrator filed his final account and report, stating that, after paying considerable sums upon the mortgage on the real estate, it had become impossible to make further payments; that the mortgage had been foreclosed, and the real property lost to the estate. It appears that the administrator from time to time had borrowed money from First National Bank of Port Angeles (hereinafter referred to as the bank), upon notes signed by him as administrator and also signed by him personally, the loans aggregating $2,450, which sums the administrator stated had

been applied upon the mortgage on the real estate. The administrator also acknowledged the receipt of $2,346.75, by way of royalties accruing from the mining claims, and showed approximately four hundred dollars received from other sources. He listed disbursements in approximately the amount of his receipts and showed a balance of $3.74 on hand. He reported the filing of ten claims against the estate, including the claim of the bank above referred to. He asked for compensation for himself and for his attorney.

In this report, the administrator, after referring to the note in favor of the bank, alleged, as above stated, that he had borrowed further money from the bank for the benefit of the estate, the payment of which he had guaranteed, in the aggregate sum of $2,450, on which had been paid on account of principal $650 from estate funds, together with other sums as interest, leaving a balance due upon these loans in the sum of $1,800.

Upon the filing of this final account, the court fixed a time for hearing the same, and thereafter Margaret Marsh, described as a minor and sole heir of Joseph Marsh, appeared by her guardian, Jessie Marsh, and filed lengthy objections to the final account, alleging that the administrator had disbursed funds of the estate without authority; that he had misapplied funds of the estate; had made no effort to defend the mortgage foreclosure action; had committed waste; had converted personal property of the estate; and had reported as claims against the estate items which were not properly so listed. The guardian prayed that the administrator be required to reimburse the estate in the amount of $2,935.77, and asked that the court disallow all claims not heretofore allowed by the court, refuse to allow any reimbursement to the administrator for money which he claimed to have expended for the benefit of the estate, and allow him no compensation for services.

The matter came regularly before the court for hearing upon the account and the objections thereto, and December 9, 1933, an order was entered reciting the personal appearance of the administrator and his counsel, and the personal appearance of Jessie Marsh, as guardian of Margaret Marsh, a minor, and her counsel, Messrs. Henry, Henry & Pierce. The order recites the taking of evidence, both oral and documentary, and contains findings based upon the evidence received and the court's examination of the files. The court found, *inter alia,* that the claims filed should be allowed; that no allowance should be made to the administrator for his services; that the administrator from time to time borrowed money from the bank for the purpose of making payments upon mortgages against the real estate; that the money was borrowed in good faith, and disbursed for the best interest of the estate, as the same appeared at the time the loans were made; that at the time of the hearing there was due the bank the net sum of $2,950. The amount which the court found was due the bank included the sum for which the claim had been filed and the balance due of money borrowed by the administrator.

The court found that the administrator acted in good faith, committed no waste, and was free from blame for the loss of the real estate by mortgage foreclosure.

The court also found that the estate then owned certain furniture and equipment which had been used in connection with the operation of the summer resort, and that this personal property should be immediately set over to Margaret Marsh, as sole heir of the deceased.

The court then found that the only property remaining to the estate was the undivided one-fourth interest in the mining claims; that this property should be retained and administered for the purpose of paying the indebtedness due from the estate, and for the benefit of the heir; that Mr. Fairservice should be discharged from his trust as administrator and the sureties upon

his administrator's bond released; and that the bank should be appointed administrator of the estate.

Based upon these findings, the court ordered the approval of the claims referred to, and allowed the same for payment, including the claim of the bank upon the

" . . . promissory note for money borrowed by the decedent during his lifetime, together with money subsequently borrowed by estate, all of which was endorsed by Mr. Alston Fairservice, $2,950.00."

The court set over the furniture and equipment to Margaret Marsh, and appointed the bank administrator of the estate, fixing its bond in the sum of one hundred dollars, providing

"That the said First National Bank, as administrator, is hereby appointed for the purpose of conserving the residue of the property pending a sale and making a sale of the same; that said First National Bank shall serve without fee except in the event of a desirable sale of the property and in such event any application for fee shall be made prior to the completion of the said sale."

Letters of administration were subsequently issued to the bank.

January 4, 1941, the bank filed its report and resignation as administrator, stating that the property had not been sold, and that it had disbursed certain items, including taxes, aggregating $69.16, on account of the estate. The bank stated that it was willing to defer any allowance by way of compensation for its services and for its attorney until such time as the mining property should be sold.

January 6, 1941, Margaret Marsh Hedman petitioned for the appointment of her husband, Robert E. Hedman, as administrator of the estate, as successor to the bank. She stated that she offered no objection to the acceptance of the resignation of the bank, and stated no objection to the bank's account as filed.

January 11, 1941, the bank's resignation and Mrs. Hedman's petition came on regularly to be heard be-

fore the court, the bank being represented by its president and by its attorney, and Mrs. Hedman appearing by Hylas E. Henry, her attorney. The court entered an order reciting the appearance of the parties and the receipt of evidence, approved the bank's account, accepted its resignation, passed the matter of an allowance by way of fees to the bank and its attorney for future consideration, and appointed Robert E. Hedman administrator of the estate in succession to the bank.

February 1, 1941, Mr. Hedman, as administrator, petitioned the court for authority to lease the mining property on a royalty basis, and the same day an order was entered authorizing the administrator to execute such a lease.

February 11, 1941, the administrator filed a report stating that, prior to the bank's resignation, Margaret Marsh Hedman, sole heir, the administrator, and Hylas E. Henry, their attorney, were informed by the president of the bank that the bank intended to offer its resignation as administrator, so that the president of the bank could become a bidder for a lease of the mining property. The administrator stated that there were then pending several tentative offers for lease of the property upon a royalty basis (the claims containing manganese, then much in demand), and

"That negotiations had prior to then been conducted on behalf of the owners by mutual consent, but without express direction by the officers of the said First National Bank of Port Angeles and that in fairness to those who had been previously negotiating for lease of the mine, it was necessary to replace Benj. N. Phillips as negotiator on short notice."

The administrator reported certain disbursements, asking that they be allowed. On the same day an order was entered, authorizing the administrator to pay the items referred to from any funds belonging to the estate, and to lease the mining claims.

September 2, 1942, Mr. Hedman, as administrator, filed a report "as to claim of First National Bank of

Port Angeles," referring to the order of December 9, 1933, *supra,* and calling attention to the final report of Mr. Fairservice, in which the latter stated that he had expended $1,142.50 by way of a payment to one Charles Anderson, and that Mr. Hedman had been informed by Mr. Anderson that Mr. Fairservice had not paid him such a sum, or any portion thereof, and that a hearing should be had upon the current petition to determine that fact. The administrator also alleged by paragraph four of his petition:

"That the said bank by the terms of said order of court of December 9, 1933, is entitled to a recoupment of the amount due under the assignment upon the sale of the property. That it is not entitled to any sum beyond that by way of interest on said sum."

The petition further called attention to the fact that pursuant to the order of December 9, 1933, the bank should receive an allowance for its services upon the sale of the mining property, and then alleged that the mining property had not been sold, but had been leased only, and that for this reason the bank was not entitled to any allowance for services as administrator of the estate. The administrator further alleged that, during the bank's administration of the estate, the bank had, without notice to the heir and without her subsequent ratification, executed an option on the mining property; that thereafter the option was relinquished; and "that the present lease grew out of negotiations to renew the option previously illegally granted." The administrator further stated that he had no objection to the allowance of a fee up to one hundred dollars as compensation to the attorney for the bank, as administrator.

September 10, 1942, the bank filed its petition for the allowance of compensation for its services as administrator, and for allowance of a reasonable sum as attorney's fees. In this petition, the bank alleged that the mining property had been leased under an operating agreement, and that substantial sums had been

paid into the estate from the proceeds of the mining operation.

September 15, 1942, the matter came on for hearing before the court upon the bank's petition for allowances and the administrator's report and objections, above referred to. At this hearing the bank was represented by its attorneys, and the administrator appeared by Mr. Hylas E. Henry, of the firm of Henry, Henry & Pierce, Mr. Henry having represented the guardian of Margaret Marsh Hedman at the hearing in 1933, and having represented the heir and Mr. Hedman, as administrator, at all times thereafter.

The statement of facts does not include Mr. Henry's opening statement on behalf of the administrator stating his position as to the bank's claim upon the indebtedness due from the estate and its request for an allowance by way of administrator's and attorney's fees, nor does it contain the answering statement made by counsel for the bank. The statement contains, however, a statement by the court, to the effect that the bank's claim had been fixed and settled by the order of December 9, 1933. The statement then contains several pages of colloquy between counsel for the respective parties and the court, Mr. Henry contending that the administrator was entitled to challenge the bank's claim both as to the indebtedness and the amount claimed as interest thereon.

The statement then shows that Roy S. Jensen was called as a witness on behalf of the bank, his examination and cross-examination comprising approximately thirty pages of the statement. No other witness was called by either party.

The record discloses that the president of the bank, Mr. Phillips, was present in court during a portion of the hearing, but left before the hearing was concluded. Mr. Henry stated that he had expected to examine Mr. Phillips, but did not request that the hearing be continued until Mr. Phillips' presence could be procured.

October 15, 1942, the administrator, through his counsel, filed objections to a proposed order, which had been prepared by the bank's attorney, objecting to the allowance of administrator's fee to the bank, to an allowance of attorney's fees, and to any order directing payment to the bank of the sum of $2,950, for the reasons that that sum was not properly chargeable against the estate because no claim for such an amount had ever been served and filed in the estate; that any lien supporting such claim, if any lien did attach, had long since been barred by the statute of limitations; and that the proposed order referred to was an attempt to reinstate an outlawed judgment against which the statute of limitations had run. Objection to the allowance of any interest was also noted.

On the same day, October 15, 1942, the court signed an order embodying the court's ruling upon the bank's petition for the allowance of fees, and the administrator's so-called report in connection with the bank's claim. The order recites the appearance of the parties, both in person and by their respective counsel, and ordered that the bank be allowed $250 for its services as administrator, and $250 by way of compensation to its attorneys. The order further directed that the administrator pay to the bank, from funds belonging to the estate, the indebtedness due to the bank from the estate, in the principal sum of $2,950, together with interest thereon, computed in the manner and at the rate specified in the note. From this order the administrator has appealed.

Appellant's brief on appeal was prepared by Messrs. Henry, Henry & Pierce, as attorneys for appellant, but, after the appeal was perfected, Mr. Hylas Henry, who had evidently handled all matters concerning this estate during and since 1933, died, and on oral argument appellant was represented by Messrs. Riddell & Riddell, the present counsel for the administrator.

Appellant in his brief argues that the court erred in

refusing to reopen the matter of the final account of Alston Fairservice, which was approved by the order of December 9, 1933, contending that appellant, by the testimony of one Charles Anderson, could convince the court that Mr. Fairservice had not in fact made a payment to Mr. Anderson, which the former stated in his report that he had made, and that for this reason the bank's claim would be reduced in the sum of $1,142.50. The administrator also complains of the allowance to the bank of the administrator's fee and the allowance for compensation to its attorney.

In appellant's brief, his former counsel first argue that the order of December 9, 1933, is in effect a decree of distribution and a final order, having the attributes of a judgment, and that, as this order provides that the bank should serve as administrator without compensation, except in the event of a desirable sale of the property, no allowance should be made to the bank, as the mining property had neither been sold nor operated, nor had it produced any revenue, while the bank was administrator. Appellant also complains that the order appealed from makes an allowance of $250 directly to the bank's attorneys as compensation for their services, instead of allowing that fee to the bank for the purpose specified. In connection with this latter matter, the allowance should have been made to the administrator as compensation for his counsel's services, but this slight irregularity is immaterial and will be disregarded.

Appellant's brief then calls attention to the fact that, by the order of December 9, 1933, the personal property was distributed and set over to Margaret Marsh. Evidently appellant's then counsel was of the view that this made the order a decree of distribution. The record does not disclose the appraised value of this personal property, but it was evidently treated as worth little, and no creditor objecting, was turned over to the heir. By the order referred to, the administration of the estate was continued, and clearly

the order of December 9, 1933, was simply an order settling Mr. Fairservice's final account and was not a decree of distribution. The partial distribution made did not change the nature of the remainder of the order. No one has ever complained of the partial distribution made, which may well have been irregular, save as based upon consent of all interested parties.

It is then argued in appellant's brief that, as the bank never filed a claim for $2,950, no claim in any such amount could be allowed, and that, since the entry of the order last referred to, the bank does not stand as a creditor, but as a judgment debtor under that order, and that, as more than six years have elapsed since the date of this order, the bank's lien or claim has been barred by the statute of limitations controlling the life of a judgment.

We find no merit in this argument. The bank seasonably filed its claim with the administrator for $1,196, basing its demand upon a promissory note signed by the deceased. This claim was allowed by the administrator and later by the court. From the record, it appears that thereafter Mr. Fairservice, as administrator, borrowed money from the bank in an attempt to preserve the property of the estate. For money so loaned, the bank did not acquire a right against the estate for which it would be required to file a verified claim as for an indebtedness due it from the deceased in his lifetime. The transaction was a portion of the administration of the estate. The money borrowed was loaned to the estate, and the acts of Mr. Fairservice in borrowing the money were expressly approved by the court in the order of December 9, 1933, settling the administrator's final account. This order did not constitute a judgment lien against which the statute of limitations would run, but simply determined the amount due the bank, as a step in the orderly administration of the estate, pending final settlement and closing thereof. 34 C. J. S. 293, § 454 (b).

■ The sole heir of the deceased, Margaret Marsh Hedman, was represented by her guardian, who appeared by her counsel and filed formal objections at the hearing upon Mr. Fairservice's final account. The order settling the final account recites the appearance of the guardian and her counsel. From the lengthy findings made and the attention to detail with which the order was drawn, it would appear that the court devoted considerable attention to the matter. The order was approved as to form by counsel for the guardian. The statutory notice of the hearing on the final account was given, and Mrs. Hedman, having been represented at the hearing and having contested the same through her guardian, is bound thereby. *In re Krueger's Estate*, 11 Wn. (2d) 329, 119 P. (2d) 312. An order entered upon the final account of an administrator after due notice given, while not a final settlement of the estate, is *res judicata* as to the settlement of the final account.

"A settlement made by a personal representative who resigns his trust or is removed while the estate remains unsettled is not a final settlement of the estate, but is to be regarded as the final settlement of the outgoing representative. It fixes his rights and liabilities, and binds all persons interested as to the matters embraced in such settlement until it is set aside in some direct proceeding." 34 C. J. S. 1114, § 911.

Cases which concern questions which have arisen upon rights fixed by final decree of distribution closing an estate are not here in point.

By the order of December 9, 1933, the amount due to the bank from the estate was definitely established, to be paid in due course of administration. The original claim filed was for principal and interest at eight per cent, and was allowed. Appellant contends that in any event the bank should be denied interest. We find no merit in this contention.

■ It is true, as argued by appellant's counsel, that the order of December 9, 1933, appointing respondent

bank as administrator, provided that the bank should serve without compensation, except in the event of a desirable sale of the property, in which event an application for compensation should be made prior to the completion of the sale. It clearly appears that the mining property is being worked under an operating lease upon a royalty basis, the estate receiving its share of royalties paid, based upon the amount of valuable mineral removed from the mine. Such a contract, providing for the removal by the lessee of the corpus of the property, is in effect a sale of the property, and the fact that the bank resigned as administrator prior to the making of the agreement should not deprive the bank of its right to compensation for services rendered. The record discloses no basis for holding that the allowances made by the court to the bank for its compensation and for compensation to its counsel were improperly made or are too large.

At the oral argument, appellant's present counsel suggested additional reasons for the reversal of the order appealed from. We have considered all the arguments presented on appellant's behalf, but find no basis for granting the relief desired, or any relief.

The order appealed from is affirmed.

SIMPSON, C. J., BLAKE, ROBINSON, and GRADY, JJ., concur.