[No. 6982-9-I. Division One. January 28, 1980.]

*In the Matter of the Estate of* JAY A. TUOTT.
ELIZABETH C. TUOTT, *Appellant.*

*Eugene A. Stock,* for appellant.

*Leo Gese, John Watts,* and *Riach, Gese & Seather,* for respondent.

DORE, J.—Petitioner sought to recover certain community funds and assets in probate from her daughters. The trial court ruled that such claims were barred by laches.

## ISSUE

Whether the trial court erred when it ruled that the petitioner's claims were barred by laches.

## FACTS

On June 25, 1974, Jay Tuott died testate. He was survived by his wife Elizabeth, two daughters, and a son. On July 3, 1974, daughter Anne was confirmed as executrix of Tuott's separate estate and his widow Elizabeth was appointed administratrix of his community estate. There was only one probate number assigned to both the separate and community estates.

As administratrix of the community estate, Elizabeth paid numerous community property claims. The community estate is now insolvent and unable to satisfy several remaining claims and community costs of administration.

On September 3, 1974, Elizabeth, as administratrix, employed a "Citation and Order to Show Cause" directed to decedent's daughters to show why they should not be ordered to return various community assets which Elizabeth claimed were fraudulently obtained. These assets included (1) an automobile, (2) monies earned during the 2–week operation of a community–owned store, (3) cash taken from the store account, (4) furniture, and (5) loss of income from a farm.

On July 2, 1976, Anne resigned as executrix of the separate estate. Attorney Leo Gese was appointed administrator de bonis non, as her replacement. Upon her resignation, Anne furnished no accounting in connection with her term of administration. There was no judicial determination concerning which assets were separate and which were community, nor which liabilities were separate or community. On December 16, 1977, Gese submitted a final report and petition for distribution. On February 16, 1978, the trial court entered an order approving Gese's report despite the aforementioned deficiencies. On January 12, 1978, Elizabeth submitted her final report and petition for distribution. Included in this account were claims for six community items allegedly illegally taken by decedent's daughters.

On August 3, 1978, a trial was held in Snohomish County Superior Court on the administrator's report. The trial court dismissed the claims against the decedent's daughters holding that they were barred by laches. The court stated:

It is the court's opinion that these matters all have to be checked on the basis of laches, that an accounting should have been brought during the lifetime of this estate and that there was a failure to do that . . .

### DECISION

Laches is the inexcusable delay in asserting a right. Thus, the defense relates to the neglect, for an unreasonable length of time, to do what should have been done. *Arnold v. Melani,* 75 Wn.2d 143, 437 P.2d 908 (1968). There is no hard and fast rule as to the length of time that will bar a proceeding for an accounting. The determination depends upon the facts of each case and the trial court is vested with large discretion. *Northern Pac. Ry. v. Boyd,* 177 F. 804 (9th Cir. 1910), *aff'g Boyd v. Northern Pac. Ry.,* 170 F. 779 (E.D. Wash. 1909), *aff'd,* 228 U.S. 482, 57 L. Ed. 931, 33 S. Ct. 554 (1913).

The trial court based its laches ruling on the basis that administratrix Elizabeth never brought an action for accounting, nor did she bring this action during the lifetime

of Tuott's separate estate. However, the record indicates that Elizabeth *did* bring an action for accounting. Elizabeth's final report and petition for distribution included numerous claims for community items allegedly taken by the daughters. On August 3, 1978, after notice to all parties, a hearing was held in which the court heard extensive evidence on the merits of Elizabeth's claim. Consequently it is clear that an action *was* brought during the lifetime of the estate.

█ It is well settled that the resignation of an executor does not take effect until he has made a proper accounting and settlement of the assets in his hands. *Magraw v. Donovan*, 177 F. Supp. 803 (D. Minn. 1959). The same is true under the probate code of this state.

RCW 11.76.010[1] requires a personal representative to make an annual report. In addition, RCW 11.28.290[2] requires a retiring personal representative to make a report

---

[1] "Not less frequently than annually from the date of qualification, unless a final report has theretofore been rendered, *the personal representative shall make,* verify by his oath, and file with the clerk of the court a report of the affairs of the estate. Such report shall contain a statement of the claims filed and allowed and all those rejected, and if it be necessary to sell, mortgage, lease or exchange any property for the purpose of paying debts or settling any obligations against the estate or expenses of administration or allowance to the family, he may in such report set out the facts showing such necessity and ask for such sale, mortgage, lease or exchange; such report shall likewise state the amount of property, real and personal, which has come into his hands, and give a *detailed statement of all sums collected by him,* and of all sums paid out, and it shall state such other things and matters as may be proper or necessary to give the court full information regarding any transactions by him done or which should be done. Such personal representative may at any time, however, make, verify, and file any reports which in his judgment would be proper or which the court may order to be made." (Italics ours.) RCW 11.76.010.

[2] "If any personal representative resign, or his letters be revoked, or he die, *he or his representatives shall account for,* pay, and deliver to his successor or to the surviving or remaining personal representatives, all money and property of every kind, and all rights, credits, deeds, evidences of debt, and papers of every kind, of the deceased, at such time and in such manner as the court shall order on final settlement with such personal representative or his legal representatives." (Italics ours.) RCW 11.28.290.

and account for the property in her possession before being released by the probate court.

As executrix of the Tuott separate estate, Anne made no accounting prior to her resignation. Therefore, the court had no jurisdiction to discharge her without requiring a compliance with RCW 11.28.290.

A final report serves a very special function to the probate court. As stated in *In re Krueger's Estate,* 11 Wn.2d 329, 343, 119 P.2d 312 (1941):

> They were designed, first, to inform the court of the financial condition of the estate at a given date as well as the changes occurring over a period of time, and of the progress accomplished toward the final settlement; second, to aid the legal representative in his management.

We conclude that executrix Anne's failure to comply with the procedure set forth in our probate code renders her resignation ineffective. We further hold that administratrix Elizabeth's claims as set forth in her final report were not barred by laches. The trial court's order closing the community estate shall be set aside and this probate is remanded to the trial court, wherein the trial court shall require an accounting from Anne, pursuant to RCW 11.76-.010 and RCW 11.28.290, and take all available legal steps to recover all community assets, if any.

Reversed and remanded for further proceedings consistent with this opinion.

JAMES, A.C.J., and ANDERSEN, J., concur.